**Daisy WASHINGTON, Plaintiff–
Appellant,**

**v.**

**AMERITECH SICKNESS AND AC-
CIDENT DISABILITY BENEFIT
PLAN, Defendant–Appellee.**

**No. 02–2746.**

United States Court of Appeals,
Seventh Circuit.

Argued April 23, 2003.

Decided May 29, 2003.

Before BAUER, MANION, and DIANE
P. WOOD, Circuit Judges.

## ORDER

Daisy Washington had worked at Ameritech for nearly twenty years when she fell ill, both physically and psychologically, in the summer of 1997. The Ameritech Sickness and Accident Disability Benefit Plan provided her with short-term disability benefits, but the Plan's administrators had difficulty getting some of Washington's doctors to provide them with documentation of her maladies. The Plan eventually concluded that the available documentation did not establish that Washington was disabled. It therefore terminated Washington's benefits as of February 9, 1998. Washington sued in the district court under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), seeking reinstatement of benefits, but the court granted summary judgment to the Plan. Washington now asks this court to reverse that judgment, arguing that the Plan's termination of her benefits was arbitrary and capricious. For the reasons discussed below, we affirm the district court's judgment.

In June 1997, Daisy Washington, a manager for Ameritech, became ill. She was diagnosed with hypertension, congestive heart failure, and severe depression. She took leave from work and sought treatment, receiving short-term benefits under Ameritech's disability benefits plan. It is not clear whether the treatment for Washington's physical ailments was successful, but she evidently continued to suffer from depression and anxiety. She attempted to resume work in September 1997, but soon suffered a relapse of her depression and anxiety.

Ameritech's benefit plan requires a claimant to submit objective medical documentation to support a disability finding. It specifies that the Benefits Committee "has full discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with Plan terms." A disability is defined as "a sickness or injury, supported by objective medical documentation, that prevents the Eligible Employee from performing the duties of his/her ... job with or without reasonable accommodation." The Plan's administrators therefore attempted to obtain documentation of Washington's condition. They received some notes in late September from Washington's primary care physician, Dr. W.R. Lewis, showing that Washington complained of nausea and lack of energy, and had a long history of nervousness and suicidal ideation. The administrators also contacted Washington's psychiatrist, Dr. Susan Nowak, but despite numerous requests, Dr. Nowak failed to provide the Plan with documentation of Washington's psychiatric condition. The Plan therefore determined on October 22, 1997, that Washington did not qualify for disability benefits.

Despite this finding, and for reasons unspecified in the record, the Plan continued paying benefits to Washington and trying to obtain documentation of her condition. Washington, for her part, appears to have contacted Dr. Nowak, but was unable to persuade her to respond to the Plan's requests. Washington did, however, begin seeing a social worker, Margaret Hazenbush, who provided the Plan with copies of her clinical notes. The notes indicated that Washington was seriously depressed, cried frequently, and suffered from anxiety and panic attacks, but also that the severity of her symptoms varied over time. Washington continued to suffer physically as well, developing chronic uveitis, a form of eye infection. She supplied the Plan with notes from Dr. Katherine Burke, her new primary care physician, and from Dr. Richard Multak, her ophthalmologist.

In February 1998, the Plan's administrators again reviewed Washington's record. Finding insufficient support for a determination of disability–her physical symptoms not severe enough, her psychological symptoms either not severe enough or not adequately established–the administrators continued to seek more detailed information from Washington's various care providers. When that was unavailing, they approved the benefits that had been granted through February 8 (based in part, apparently, on the diagnosis of uveitis) but concluded that as of February 9, Washington was no longer to receive disability benefits. They wrote Washington of their decision on February 23, informing her of her right to appeal and inviting her to submit additional medical records to support her claim of disability.

A week later, the Plan's administrators received more notes from Hazenbush indicating that Washington was tired, unmotivated, and upset with the medical profession. They again tried to speak with Dr. Nowak, and again were unsuccessful. They also submitted Washington's record for review by an independent consulting physician, Dr. John Billinsky, Jr., who concluded that, although it was a close call, he did not believe that the evidence supported Washington's claim of disability. Finally, at a hearing on July 14, 1998, the Plan's Employees' Benefits Committee upheld the denial of benefits as of February 9. The Committee noted that the diagnosis of depression did not include information about Washington's functional abilities or impairments and that the notes from Hazenbush suggested that the resulting impairment was at worst moderate, not severe. The Committee notified Washington of its decision on July 20.

Washington sued the Plan in district court, seeking reinstatement of benefits. Her chief exhibit was a May 19, 1998 letter from Dr. Nowak, addressed "to whom it may concern," complaining angrily about the Plan's denial of benefits to her patient and offering assurance that Washington did in fact suffer from a serious and debilitating depression. In the letter, Dr. Novak also claimed that she had not been contacted by the Plan, at least in connection with the February 23 denial of benefits. Washington stated that this letter was faxed to the Plan on May 20, and provided a copy of a fax cover sheet addressed to the secretary of the "hearing committee." The Plan denied having received the letter, and pointed out that it was in any event unauthenticated and contained no documentation that would require a different outcome. The Plan moved for summary judgment, which the court granted.

On appeal, Washington's overall aim is to convince us that the Plan's denial of benefits was "arbitrary and capricious"– which is the proper standard of review where an ERISA plan gives its administrators discretionary authority over benefit determinations. *See Hackett v. Xerox Corp. Long–Term Disability Income Plan*, 315 F.3d 771, 773 (7th Cir.2003); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Under the "arbitrary and capricious" standard, "a plan administrator's decision should not be overturned as long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001) (internal quotation marks omitted).

To show that the Plan's decision was arbitrary and capricious, Washington puts forth a variety of arguments, somewhat haphazardly. Some of her arguments warrant little attention: she suggests, for example, that the cut-off date of February 9 was arbitrary, that the Plan should have subjected her to an independent medical evaluation, and that a sick person like herself should not be required to jump through bureaucratic hoops. These arguments are clearly without merit. Also meritless is her argument that the reasons given for the denial at different times were inconsistent: the reason offered was always that the documentation provided did not establish a disabling condition.

■ Somewhat more substantial is Washington's argument that the Plan should have considered the May 19 letter from Dr. Nowak. The letter identifies a number of serious symptoms, including "crying spells, very poor sleep, extreme fatigue, agitation, irritability, inability to concentrate, anhedonia, significant anxiety, and suicidal ideation," and concludes that Washington "is currently unable to do any substantive work, even with accommodation." However, although the letter is prefixed with a fax transmittal page addressed to "Linda Nahitas—Secr. Hearing Committee (Ameritech)," there is no fax receipt or other confirmation that the letter was actually transmitted, let alone that the Committee received it before the final July 14 hearing. Nor was the authenticity of the letter ever established by way of affidavit, identification, or oath, making questionable its admissibility before the district court for purposes of avoiding summary judgment. *See Martz v. Union Labor Life Ins. Co.,* 757 F.2d 135, 138 (7th Cir.1985). Washington's suggestion that this letter demonstrates arbitrary and capricious behavior by the Plan is therefore untenable.

■ Washington also attempts to rely on a disability determination by the Social Security Administration to show that the Plan acted arbitrarily and capriciously in denying benefits. We have considered SSA determinations to be relevant where an ERISA plan included SSA disability as a condition for plan disability, *Reich v. Ladish Co. Inc.,* 306 F.3d 519, *passim* (7th Cir.2002), or where a plan's sponsors assisted the plaintiff in obtaining Social Security benefits, *Ladd v. ITT Corp.,* 148 F.3d 753, 755–56 (7th Cir.1998). However, an SSA finding of disability has been deemed irrelevant where the SSA file was not part of the materials before plan administrators, even though the plan was apprised of the SSA's finding. *Donato v. Metro. Life Ins. Co.,* 19 F.3d 375, 380 (7th Cir.1994). *See also Anderson v. Operative Plasterers' and Cement Masons' Int'l Ass'n Local No. 12 Pension & Welfare Plans,* 991 F.2d 356, 358–59 (7th Cir.1993) (SSA finding of disability not binding on plan, even though plan had not disagreed with SSA findings in the past). Other circuits have likewise considered SSA determinations not binding on ERISA plans. *See Coker v. Metro. Life Ins. Co.,* 281 F.3d 793, 798 (8th Cir.2002); *Block v. Pitney Bowes Inc.,* 952 F.2d 1450, 1455–56 (D.C.Cir.1992). In this case, there has been no showing that the Plan either required or allowed any reference to SSA determinations, that the Committee was aware of the SSA's finding of disability, or that the Committee had the same documentary materials before it as were before the SSA. This argument, therefore, likewise fails.

Finally, Washington points out that at many points along the way to the Committee's final determination, including its February 23 letter of denial, Washington was incorrectly identified as a service repre-

sentative, instead of a manager.[1] She argues that the duties of a manager require greater attention and provoke greater stress than those of a services representative, and that the misunderstanding therefore resulted in an arbitrary and capricious denial of benefits. To counter this argument, the Plan included in its summary judgment materials a sworn declaration from a member of the Committee, Jed DeBoer, indicating that at the time of its July 14 hearing, the Committee was aware of Washington's managerial position and responsibilities. It is striking, however, that in describing Washington's position, the declaration refers exclusively to the position's *physical* demands, whereas Washington's argument concerns precisely those non-physical demands that would arguably be affected by her depression. DeBoer's declaration leaves it unclear whether those non-physical demands were taken into consideration. This would arguably be a problem if Washington's non-physical ailments had been adequately documented in the materials before the Committee. But given Washington's failure to provide such documentation, we cannot conclude that DeBoer's limited declaration shows that the Committee's action upholding the denial of benefits was arbitrary and capricious.

The Plan's definition of "disability" includes a requirement of objective medical documentation. Taken as a whole, the record in this case suggests that the Plan made a good-faith effort to obtain documentation of Washington's condition while continuing to pay out benefits. Eventually, the Plan determined that the documentation Washington had been able to provide showed only a moderate impairment and did not establish that she was unable to perform the duties of her job. Washington has been unable to show that this determination was arbitrary and capricious. We therefore AFFIRM the district court's grant of summary judgment.

---

1. This misunderstanding seems to have arisen during the September 11, 1997 phone call in which Washington renewed her application for disability benefits.