# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2772

_____

Kenneth Coker, Sr.,                              *
                                                 *
    Appellant,                 *
                                                 *    Appeal from the United States
v.                                               *    District Court for the Eastern
                                                 *    District of Arkansas
Metropolitan Life Insurance Company,             *
a/k/a MetLife and Allstate Insurance             *
Company,                                         *
                                                 *
    Appellees.                 *

_____

Submitted:  January 14, 2002
Filed: February 28, 2002

_____

Before WOLLMAN,[1] Chief Judge, HANSEN, Circuit Judge, and OBERDORFER,[2] District Judge.

_____

OBERDORFER, District Judge.

_____

[1]The Honorable Roger L. Wollman stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on January 31, 2002.  He has been succeeded by the Honorable David R. Hansen.

[2]The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

Appellant Kenneth Coker, Sr. appeals from the district court's[3] decision in favor of appellees Metropolitan Life Insurance Company ("MetLife") and Allstate Insurance Company ("Allstate") on cross-motions for summary judgment. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

I.

Coker was an insurance agent for Allstate for thirty years. As an Allstate employee, Coker was a participant in the company's employee welfare benefit plan, for which MetLife serves as the insurer and claims administrator. The Allstate plan was established and is administered under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. Coker applied for long-term disability benefits on August 26, 1996. MetLife denied coverage because Coker failed to prove that he was "totally disabled" to its satisfaction. The plan defines "totally disabled" as follows:

Totally Disabled or Total Disability means that due to Sickness or Injury:
!  you are unable to perform the material duties of your occupation with your Employer during the Waiting Period and during the next 24 months;
!  thereafter, you must be totally incapable due to Sickness or Injury of performing the material duties of any gainful occupation for which you are reasonably fit based on training, education, or experience.

App. at 11.

Coker was diagnosed with diabetes mellitus in 1985. Beginning in the spring of 1996, he reported several near-fainting, presyncopal episodes to his family physician, Dr. Stanley Teeter. Dr. Teeter referred Coker to a neurologist, Dr. Scott

---

[3]The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

Schlesinger, who suspected that the episodes might be a symptom of subclavian steal syndrome, a condition where blood that should flow to the brain is diverted to a limb. Dr. Schlesigner in turn referred Coker to a cardiologist, Dr. Andy Henry. Dr. Henry found no evidence of cardiac abnormality, other than "mild mitral valve prolapse." Dr. Henry also assessed Coker for subclavian steal syndrome, based on Dr. Schlessinger's suspicion, but concluded that the patient did not have the typical symptoms of that disorder. Dr. Henry's tentative diagnosis was left subclavian stenosis (cut-off of blood flow) with asymptomatic reversal of flow in the left vertebral artery.

During an examination on May 15, 1996, Dr. Teeter found that Coker's recent blood sugar test results had deteriorated, which he and Coker attributed to work-related stress. Coker proposed taking medical leave from work. Dr. Teeter agreed and Coker did so on the following day. Coker began insulin treatment on June 13, 1996; previously, his diabetes had been managed through diet, exercise, and medication. Monthly check-ups in July, August, September, November, and December 1996 indicated that his blood sugar levels were improving and his near-fainting episodes had ceased, although Dr. Teeter continued to note that any return to the workforce would raise Coker's stress levels and worsen his diabetes. Coker, who needs to control his weight in order to manage his diabetes, also reported a weight gain of fourteen pounds from August to November 1996.

Following Coker's application for long-term disability benefits in August 1996, he submitted a form and a letter from Dr. Teeter outlining his condition. Dr. Teeter stated a primary diagnosis of "vascular headaches related to stress syndrome caused by his work situation and employer/employee relationships." App. at 45. Dr. Teeter identified "insulin-dependent diabetes mellitus" as a secondary medical problem. Id. Dr. Teeter noted that Coker's health had improved since May 15, 1996, when he began his medical leave, and expressed the opinion that Coker's health would

deteriorate if he returned to work. "It seems to me that it would be in his best interest to obtain a medical retirement or disability retirement at this time." App. at 48.

At the request of MetLife, Coker met with a psychiatrist, Dr. Richard Sundermann, Jr., on October 11, 1996. Dr. Sundermann found no need for psychiatric treatment. The psychiatrist noted that Coker's "diabetes, proclivity for headache and sleep were severely adversely effected by the stress of his particular work situation and when working he suffered additional complications of insomnia, impaired concentration, and depressed mood." App. at 69. Dr. Sundermann concurred with Dr. Teeter that Coker "was dibilitated [*sic*] by his medical condition and other psychological [*sic*] while he was working and such in all probability would recur if he returned to this particular work situation." Id.

MetLife referred Coker's claim to its in-house Disability Nurse Specialist on November 4, 1996. The referral indicated the opinion that no objective information supported Coker's application for long-term disability benefits. The nurse agreed, and a MetLife letter of November 18, 1996 denied Coker's claim. Coker promptly requested a review of the denial; MetLife responded on December 11, 1996 with a letter stating that a review was not warranted because Coker had not submitted any new information. That letter gave Coker thirty days to submit new information in support of his claim. On January 13, 1997, MetLife sent a second letter, granting Coker an additional thirty days. Coker responded on January 14, 1997, with clinical notes from Dr. Teeter dating from May 1996 to December 1996. On January 21, 1997, MetLife referred Coker's claim to an independent medical review company, Network Medical Review. Two physicians at National Medical Review, Dr. Paul Caulford and Dr. Robert Porter, respectively certified in family medicine and occupational medicine, reviewed Coker's medical records and concluded, in a report dated February 7, 1997, that Coker "does not substantiate a claim for total disability." App. at 107. On February 11, 1997, MetLife denied Coker's claim for long-term disability benefits.

Following MetLife's denial in February 1997, Coker filed suit in the Circuit Court of Pope County, Arkansas on May 14, 1997. In the interim, on April 24, 1997, an Administrative Law Judge granted Coker's request for disability benefits under the Social Security Act. App. at 122-134. Because plaintiff's cause of action arises under ERISA, MetLife removed the case to federal court on June 13, 1997 pursuant to 28 U.S.C. § 1441 and 19 U.S.C. § 1132(e)(1). In an order dated September 23, 1998, the district court denied plaintiff's motion to supplement the record with evidence of the Social Security Administration's decision, but remanded Coker's claim to MetLife for reconsideration in light of his eligibility for Social Security disability benefits. App. at 113. MetLife, in a letter dated November 2, 1998, again denied Coker's claim. The parties subsequently submitted cross-motions for summary judgment, and the district court ruled in MetLife's favor on June 13, 2001. Coker filed a timely appeal on July 5, 2001.

II.

The district court's grant of summary judgment is reviewed *de novo*. See Reidl v. General American Life Ins. Co., 248 F.3d 753, 755 (8th Cir. 2001). However, MetLife's underlying denial of benefits is reviewable only for abuse of discretion. "Where a plan gives the administrator 'discretionary authority to determine eligibility for benefits,' we review the administrator's decision for an abuse of discretion." Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). Coker concedes that MetLife possessed discretionary authority when reviewing his claim.

The plaintiff raises five issues on appeal, alleging that: (1) the district court erred in applying Fletcher-Merrit v. Noram Energy Corp., 250 F.3d 1174 (8th Cir. 2001); (2) MetLife's decision was an abuse of discretion, in light of the contradictory ruling from the Social Security Administration; (3) MetLife's decision is undercut, rather than supported by, substantial medical evidence; (4) MetLife improperly relied

on the conclusions of physicians who had never examined Coker; and (5) the reviewing physicians' report contained factual inaccuracies and misconstrued the findings of Drs. Teeter, Henry, and Sundermann. Given the lenient, abuse of discretion standard applied to a plan administrator's denial of benefits, none of these arguments justify reversing the district court's grant of summary judgment to MetLife.

A.

"A plan administrator's discretionary decision is not unreasonable merely because the reviewing court disagrees with it. Because the plan administrator offered a reasonable explanation for its decision, it 'should not be disturbed even if another reasonable, but different, interpretation may be made. ... Because substantial evidence supported the plan administrator's decision, the district court erred in its review for abuse of discretion." Fletcher, 250 F3d at 1180-1181. The district court's June 13, 2001 summary judgment order applied the standard set forth in Fletcher in determining that the denial of Coker's application for benefits was supported by substantial evidence and was therefore within the defendant's discretion:

> The record reflects that the administrator gathered the medical records documenting plaintiff's claim, was the moving force in obtaining a psychiatric evaluation, received a review of the records and evaluation conducted by two physicians, and even *sua sponte* extended the time to permit Coker to submit additional records after the deadline had passed without response. The analysis of the medical records by the two certified doctors contained in the report to MetLife addressed the tests performed, those results, the consultations, the evaluations, the diagnoses and the opinions as to objective medical evidence in light of the plan's definitions. ... While plaintiff might point to certain date discrepancies in the report that resulted due to the left margin of the copies of the medical records [*sic*], the Court simply

cannot say that a reasonable person could not have reached the same interpretation or decision as the plan administrator based on objective medical evidence.

Order at 22.

Coker argues that <u>Fletcher</u> was misapplied because the medical facts underlying his claim are substantially different than the claimant in <u>Fletcher</u>. However, the district court relied on <u>Fletcher</u> only to recite the appropriate standard for review of an ERISA plan administrator's denial of long-term disability benefits, without drawing any comparisons between the two plaintiffs to resolve the substantive question of Coker's entitlement to disability benefits. There is no error here.

B.

Coker argues that MetLife's denial of benefits is unreasonable because Administrative Law Judge Francis Mayhue found that the appellant "meets the disability insured status requirement of the Social Security Act" on the basis of disabling pain. App. at 130-131. Although plaintiff acknowledges that Judge Mayhue's decision has no *res judicata* or other controlling effect, he claims the similarity between the Social Security Administration's definition of disability and MetLife's definition of disability highlights the irrationality of MetLife's decision to deny benefits. The determination that Coker suffers from a pain-based disability under Social Security regulations does not require MetLife to reach the same conclusion. <u>See</u> <u>Schatz v. Mutual of Omaha Ins. Co.</u>, 220 F.3d 944, 950, n. 9 (8th Cir. 2000); <u>see also</u> <u>Ciulla v. USAble Life</u>, 864 F. Supp. 883, 888 (W.D. Ark. 1994) ("ERISA plans are not bound by Social Security determinations, and this court owes no deference to findings made under the Social Security Act.").

Additionally, this Circuit's decision in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), was central to Judge Mayhue's determination of plaintiff's disability. See App. at 129. However, the Circuit has specifically declined to extend Polaski from Social Security to ERISA cases. See Conley v. Pitney Bowes, 176 F.3d 1044, 1049 (8th Cir. 1999). Judge Mayhue's administrative decision does not establish error in Judge Howard's decision.

C.

Appellant contends that MetLife's denial of benefits is not supported by substantial evidence. Coker points to the conclusions of Dr. Teeter, his treating physician, the conclusions of Dr. Sundermann, a board certified psychiatrist, and the findings of Dr. Henry, a board certified cardiologist, as evidence of his disability. According to appellant, the record indicates he suffers from diabetes and syncopal episodes.

MetLife's reviewing physicians, Drs. Caulford and Porter, agree that Coker is an insulin-dependent diabetic, but MetLife found nothing in the record to indicate that Coker's diabetes renders him unable to perform the material duties of his job or any other occupation. As for Coker's vascular headaches and blackouts, tentatively attributed to subclavian steal syndrome, MetLife found no evidence that these medical problems prevent plaintiff from working. Although Coker complained of vascular headaches and blackouts during his May 1996 examination with Dr. Teeter, his headaches disappeared within three weeks of that visit and there is no further evidence in the record of blackouts or faintness. Coker's cardiologist, Dr. Henry, examined him within two weeks of his May 1996 check-up with Dr. Teeter, and found he did "not have typical symptoms of subclavian steal syndrome." App. at 58. An electrocardiograph and stress echo test performed by Dr. Henry showed normal results. See id. at 59-60. Dr. Sundermann concluded that Coker had no need for psychiatric treatment. Upon review of the records submitted by all three physicians,

MetLife rejected Coker's disability claim  as unsupported by objective medical evidence. See id. at 70-71, 83.  Although reasonable physicians could disagree on the extent of Coker's disability, MetLife's denial of benefits, based on the objective evidence of medical tests presented, is not unreasonable.  Under the deferential review accorded to a plan administrator's denial of benefits, a reasonable conclusion by MetLife provides us with a sufficient basis to affirm the district court's grant of summary judgment.

D.

As an extension of his argument that the denial of benefits is not based on substantial evidence, appellant claims MetLife abused its discretion in utilizing reviewing physicians who employed medical records rather than a physical examination to determine that he was ineligible for long-term disability benefits. Plaintiff relies on our earlier decision in Donaho v. FMC Corp., 74 F.3d 894, 901 (8th Cir. 1996) ("We have held, in Social Security cases, that a reviewing physician's opinion is generally accorded less deference than that of a treating physician, and we apply this rule in disability cases under ERISA as well.") (internal citation omitted).

However, our holding in Donaho does not lead to a conclusion that MetLife abused its discretion here.  Where there is a conflict of opinion between a claimant's treating physicians and the plan administrator's reviewing physicians, the plan administrator has discretion to find that the employee is not disabled unless "the administrative decision lacks support in the record, or ... the evidence in support of the decision does not ring true and is ... overwhelmed by contrary evidence." Donaho, 74 F.3d at 901.  Compare Barnhart v. UNUM Life Ins. Co. of America,  179 F.3d 583, 589 (8th Cir. 1999) ("The mere fact that UNUM reached a decision contrary to Barnhart's medical evaluators, when it based this decision on substantial evidence in the record, reports of outside medical reviewers, and conflicting evidence in

Barnhart's own submissions to the record, does not raise doubts in the mind of this Court that UNUM's decision was arbitrary or capricious."). This is not a case where the plan administrator's decision is "overwhelmed by contrary evidence." Rather, Coker has provided only subjective medical opinions, which are unsupported by objective medical evidence, such as the results of diagnostic tests. All objective medical evidence in the record indicates that Coker, although diabetic, does not suffer from any disabling medical condition. Donaho does not require a conclusion that MetLife's denial of benefits is unreasonable.

E.

Appellant's final argument is that the reviewing physicians misconstrued his medical records and history. He points to several factual errors in the report drafted by Metlife's reviewing physicians, Drs. Porter and Caulford: the report gives two years for the diagnosis of Coker's diabetes – November 1996 and 1985 – and provides incorrect dates for Coker's visits to his doctors. The reviewing doctors also allegedly mischaracterized Coker's visits to Nurse Buchanan, who was teaching the plaintiff how to self-administer insulin, taking these visits as evidence that his blood sugar levels were out of control even when he was not working. Finally, the reviewing physicians do not reach a conclusion as to whether Coker is an "insulin dependent" diabetic, despite evidence in Dr. Teeter's records that Coker was prescribed insulin. Appellant argues that these factual errors call into question the substance of the reviewing physicians' conclusions and render the report unacceptable under the standard set forth in Woo v. Deluxe Corp., 144 F.3d at 1157.

Woo is not particularly helpful to plaintiff, because the plan administrator's decision in that case was reviewed under a more exacting standard than mere abuse of discretion. See 144 F.3d at 1161 (applying "sliding scale" approach that lessens deference accorded to the plan administrator). Additionally, the shortcoming in the reviewing physician's report in Woo were far more serious than those alleged by the

-10-

plaintiff here. Woo suffered from a rare disease, sclerodoma, requiring diagnosis by a specialist, yet her plan administrator "denied her claim without having it reviewed by an appropriate expert." 144 F.3d at 1162. Coker, in contrast, suffers from medical problems – diabetes and headaches – that are readily diagnosed by a family practitioner. Beyond that, Coker's own specialists, a cardiologist and neurologist, found no objective medical evidence to support his claim of disability.

MetLife is also able to explain satisfactorily the factual errors alleged by Coker. Although the report incorrectly gives a date for the onset of Coker's diabetes in one instance, the correct date is noted elsewhere in the report. As the district court observed, the erroneous dates cited in the report are the result of poor quality photocopies, rather than medical carelessness by the reviewing physicians. See Order at 22. The report's summary of Nurse Buchanan's examination notes state that appellant "[c]omplains of difficulty controlling his blood sugars." App. at 96. Her original notes are not in the record on appeal, making it impossible for us to determine whether that summary description is accurate. In any event, the reason for Coker's visits is clearly not central to the reviewing physicians' conclusion. The report offers a clear explanation why the reviewing physicians declined to diagnose Coker as insulin-dependent: "According to the documentation, Mr. Coker is actually a Type II diabetic, who was switched to insulin in an effort to obtain better control of blood sugars, rather than because his status had changed from Type II to Type I [insulin-dependent]." App. at 100 (brackets added). A review of the substance of the report shows that the reviewing doctors considered all of the medical records appellant provided to MetLife. The reviewing physicians' report is sufficiently thorough and specific in its substantive conclusions to enable MetLife's decision to survive an abuse of discretion test.

For the reasons set forth above, we affirm the judgment of the district court.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.