Linda CALVERT, Plaintiff,

v.

FIRSTAR FINANCE, INC., et al., Defendants.

Civil Action No. 1:02CV–41–M.

United States District Court,
W.D. Kentucky,
Bowling Green Division.

June 10, 2003.

---

Zack N. Womack, Womack Law Offices, Henderson, KY, for plaintiff.

Robert L. Steinmetz, Rebecca A. Wood, Frost Brown Todd LLC, Louisville, KY, for defendants.

## MEMORANDUM OPINION AND ORDER

McKINLEY, District Judge.

This matter is before the Court upon Cross–Motions for Summary Judgment on the Administrative Record filed by Plaintiff, Linda Calvert [DN 11] and Defendant, Liberty Life Assurance Company of Boston [DN 12]. Fully briefed, this matter is ripe for decision. For the reasons discussed below, Defendant's Motion for Summary Judgment on the Administrative Record is granted and Plaintiff's Motion for Summary Judgment on the Administrative Record is denied.

### STATEMENT OF FACTS

Plaintiff, Linda Calvert, was an employee of Star Bank.[1] Calvert worked as a mortgage/retail loan officer in the Scottsville, Kentucky branch for approximately 18 years. While employed at Star Bank, Plaintiff participated in a long-term disability insurance plan issued by Defendant, Liberty Life Assurance Company of Boston ("Liberty"). Defendant, Liberty, also acts as a claim administrator for the Plan. The Plan is an employee welfare benefit plan governed by ERISA.

The Plan provides long-term disability benefits to Star Bank employees. Under the Plan, a participating employee is eligible for long-term disability benefits if he is "disabled." The Plan defines "disability" or "disabled" as follows:

"Disability" or "Disabled" means: . . .

i. If the Covered Person is eligible for the 24 Month Own Occupation Benefit, "Disability" or "Disabled" means during the Elimination Period and the next 24 months of Disability the Covered Person is unable to perform all of the material and substantial duties of his occupation on an Active Employment basis because of an Injury or Sickness; and

ii. After 24 months of benefits have been paid, the Covered Person is unable to perform, with reasonable continuity, all of the material and substantial duties of his own or any other occupation for which he is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity.

(AR 0371). Thus, under the Plan, disability is defined according to two separate time periods. The first time period begins with the initial "date of disability," and runs for 24 months following an "elimination period," which in this case was 180 days. To meet the definition of disability during this first time period, a participating employee must establish that she is unable to perform her regular job. After a claimant has received benefits for 24 months, the policy provides that to meet the definition of disability during this second time period, a participating employee must establish that she is unable to perform the duties of her own occupation or any other occupation considering the claimant's age, training, experience, age and physical and mental capacity.

In May of 1998, Calvert sustained a back injury and on August 31, 1998, Calvert underwent a lumbar laminectomy and diskectomy. She was discharged the next

---

1. At the time of Calvert's claim for disability benefits, she was employed by Star Bank. Star Bank later changed its name to Firstar Finance, Inc.

day and Dr. Ray W. Hester, Calvert's treating physician, noted that he planned to keep her off work six to eight weeks. However, due to Calvert's complaints of pain, Dr. Hester did not release Calvert to return to work. Calvert submitted a claim for long-term disability benefits. Liberty approved her long-term disability benefits effective February 27, 1999.

On May 5, 1999, Dr. Hester wrote in his office notes that Calvert could "[t]ry sedentary work—very light duty" beginning May 30, 1999. (Office Notes dated 5/10/99 at AR 0222). Dr. Hester provided Liberty with this information. (Claim Note #11 dated 5/11/99 at AR 0002). On June 2, 1999, Dr. Hester reported to Liberty that he did not think Calvert would ever return to work. (Claim Note #15 at AR 0002). Dr. Hester's medical notes, along with x-rays and CT Scans, indicate that Calvert suffers from mild disc bulging and disc protrusion at the L5–S1 level. Dr. Hester has opined that Calvert can sit one hour, stand one hour, and walk one hour in an eight hour day. Further, Dr. Hester has opined that Calvert cannot perform her past relevant work as a loan officer and due to her limitations on sitting cannot perform other work.

On June 23, 1999, Liberty requested that an Independent Medical Exam (IME) be conducted on Ms. Calvert by a neurosurgeon, Dr. Harold P. Smith. Based upon review of her medical information and a physical exam of Calvert, Dr. Smith found a mild deformity of Calvert's right L5 nerve root and broad posterior disc protrusion at the L5–S1 level, but did not find a clear explanation on the neurodiagnostic studies for Calvert's complaints of chronic pain. (AR 0166). He recommended physical therapy and/or water aerobics. Dr. Smith concluded that "[i]t would seem to me that this patient could possibly be employed with appropriate at-tention to breaks and a gradual work conditioning program." (AR 0167–0168).

On September 22, 1999, the Social Security Administration determined Calvert was "totally disabled" as of August 29, 1998. The Social Security Administration found that Calvert could not perform her past relevant work as a loan officer and did not have transferable skills to perform other work within her residual functional capacity. (AR 0139). Specifically, Susan Henry, Senior Attorney, Office of Hearings and Appeals, concluded that

> The undersigned finds that Dr. Hester's medical assessment is consistent with the claimant's medical treatment, objective findings upon testing, clinical findings, and subjective complaints of pain. Dr. Hester has recommended additional surgery and has opined the claimant can perform less than sedentary work activity. As Dr. Hester is the claimant's treating neurosurgeon and has treated the claimant consistently over a year, he is in a better position to know the claimant's limitations than the state agency physicians, who determined the claimant was capable of light exertional work. For this reason, the undersigned gives Dr. Hester's medical assessment controlling weight and adopts his assessment in this case.

(AR 0139).

On April 3, 2001, Liberty had an independent Functional Capacities Evaluation (FCE) of Calvert conducted to identify clear restrictions and limitations and to determine Calvert's ability to return to work at any occupation. Rob Pearse, an exercise physiologist/certified ergonomic specialist with Ver Nova, conducted the FCE and recommended that Calvert could be classified in the "light" physical demand level for work, she could lift up to 15 pounds occasionally and up to 10 pounds frequently, and she could "only perform

Occasional Sitting and No stooping or repeated bending." (FCE at AR 0267). Further, Pearse stated that Calvert "will need to change positions from sitting to standing frequently. Sitting is her main functional limitation." *Id.* Using this FCE evaluation, a vocational rehabilitation consultant, Mary Titterington, conducted a Transferable Skills Analysis (TSA) for Calvert in order to identify jobs that were within her physical restrictions. Titterington concluded that:

> Ms. Calverts' [sic] skills, education and past work experience qualify her to perform a wide variety of jobs but the majority of the most transferable skills require extensive sitting beyond her tested tolerances. A representative sampling of those at the light level of exertion include: Drive thru bank teller, Customer Service Representative ..., Security Guard, Cashier ..., and Bank Loan Officer. (AR 0253–0254).

The results of the TSA were then used to perform a labor market survey that indicated that there are a number of jobs available for individuals with Calvert's determined physical limitations. (AR 0257–0261).

On June 12, 2001, Liberty sent a letter to Calvert notifying her that under the terms of the policy, she did not meet the definition of "disabled" for benefits beyond the 24th month because she has the ability to perform occupations outside her previous position, and that her benefits would terminate as of June 11, 2001. (Letter from Ron Nelson dated 6/12/01 at AR 0364a–0365). In making this decision, Ron Nelson, Liberty's Disability Case Manager, relied upon the Functional Capacity Evaluation performed on April 3, 2001 which indicated that Calvert was "capable of light physical demands with restrictions of occasional sitting, no stooping, or repeated bending, will need to change positions from sitting to standing frequently and no lifting greater than 15 lbs. occasionally/10 lbs frequently." (AR 364a). Further, Nelson stated that the Transferable Skills Analysis and Labor Market Survey indicated that Calvert was capable of performing on a full time basis with her current restrictions the following occupations: receptionist, clerk, admissions associate, benefits account associate, and loan officer. AR 0365.

By letter dated August 7, 2001, Calvert appealed the denial of benefits. Calvert submitted letters from Dr. Hester dated July 5, 2001 and August 2, 2001; a report of a CT scan performed on Calvert on June 5, 2001; personal statements prepared by Calvert dated March 20, 2001 and July 5, 2001; and Dr. Hester's treatment notes covering the period February 13, 2001 to July 5, 2001. By letter of August 2, 2001, Dr. Hester, in response to the Vocational Expert Report, reaffirmed his position that Calvert was unable to perform any work. Specifically, Hester stated that "this lady requires the ability to lie down at times when the pain becomes worse, due to her increased activities and none of these positions would allow that sort of activity. I think she is not able to do these jobs, which have been listed." (AR 0343).

Upon receipt of this additional information, Liberty referred Calvert's medical information for an independent medical review by a neurosurgeon, Dr. Morris Marc Soriano. Dr. Soriano concluded that after a review of Calvert's medical records, the primary diagnosis affecting Calvert's ability to work is subjective complaints of low back pain without objective correlation. Specifically, Dr. Soriano found that "[f]rom a neurological perspective, Ms. Calvert does not have any impairment due to objective findings." (AR 0321). Further, Dr. Soriano opined it would be prudent to

place Calvert on light duty restrictions since she has had a lumbar surgery. Further, he stated that the information in Calvert's file "supports that she is able to perform her job as a loan officer full time without restriction or limitation." *Id.* Additionally, he stated that "[o]n an objective basis, however, it should be noted that Ms. Calvert is capable of unrestricted work of any kind since she has always been objectively normal." *Id.*

After reviewing the appeal and obtaining the independent medical record review from Dr. Soriano, Liberty on November 20, 2001, upheld its decision to deny additional long term disability income benefits stating that "[a]lthough Ms. Calvert reports subjective complaints of low back pain, left hip and leg pain, the objective and clinical findings do not establish that her reported low back pain is of a nature and severity which would prevent her from performing the material and substantial duties of her own occupation or other occupations identified above. There are no objective or clinical findings which support any restriction." (AR 0316–0317). As a result, Plaintiff filed this lawsuit alleging that Defendant had wrongfully denied Plaintiff's long-term disability income benefits.

### DISCUSSION

■ Both parties acknowledge that this matter is governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* The United States Supreme Court has indicated that § 1132 of the statute, which outlines the causes of action available to claimants, was intended by Congress to be the "exclusive remedy" for rights guaranteed under ERISA. *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 137, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). This is particularly true in situations, as here, where the claims revolve around the denial or recovery of benefits under an ERISA benefits plan. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *see generally* James F. Jorden *et al.,* Handbook on ERISA Litigation § 2.06 (2d ed.1997). Hence, Plaintiff's sole remedy in this case falls under the provisions of ERISA.[2]

### *Standard of Review*

■ Although ERISA expressly provides for a private cause of action to recover benefits alleged to be due under a benefit plan, the statute is silent as to the standard of review which the Court is to apply in reaching a decision on the merits of such a claim. In order to determine the appropriate standard of review, the Court must ascertain whether the plan has vested Defendant with discretion to determine eligibility for benefits. A plan administrator's denial of benefits under an ERISA plan "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). *See also Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609, 613 (6th Cir.1998). On the other hand, if the plan vests discretionary authority in the plan administrator, the Court reviews the denial of benefits under

---

**2.** The damages available to Plaintiff are found in ERISA's enforcement provision:

A civil action may be brought—
(1) by a participant or beneficiary ... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan....

29 U.S.C. § 1132(a)(1)(B).

an arbitrary and capricious standard of review, and bases its determination upon a review of the administrative record. *See Perez v. Aetna Life Ins. Co.,* 150 F.3d 550, 555 (6th Cir.1998) (en banc); *Wilkins,* 150 F.3d at 613. Both parties agree that the arbitrary and capricious standard of review applies in this case.[3]

### Application of the Arbitrary and Capricious Standard

 Having established the appropriate standard of review, the Court must now determine whether Defendant's decision to deny Plaintiff's claim for continuation of her long term disability income benefits was correct. "The arbitrary and capricious standard is the least demanding form of judicial review." *Hunter v. Caliber System, Inc.,* 220 F.3d 702, 709–10 (6th Cir.2000). A determination by the administrator to deny benefits which is based upon a reasoned explanation for the outcome and rational in light of the plan provisions must be upheld. *Broussard v. Continental Casualty Co.,* 2002 WL 1577767, *3 (W.D.Ky. July 16, 2002) (citing *Williams v. International Paper Co.,* 227 F.3d 706, 712 (6th Cir.2000)). In other words, a decision is not arbitrary and capricious when "it is possible to offer a reasoned explanation [for it], based on the evidence." *Killian v. Healthsource Provident Administrators, Inc.,* 152 F.3d 514, 520 (6th Cir.1998).

 The deferential review of the benefit denial at issue here is tempered by a conflict of interest. As the Plan Administrator, Defendant interprets the Plan deciding what expenses are covered and as issuer of the policy, ultimately, pays these expenses. "This 'possible conflict of interest' inherent in this situation 'should be taken into account as a factor in determining whether [Liberty's] decision was arbitrary and capricious.'" *University Hospitals of Cleveland v. Emerson Electric Co.,* 202 F.3d 839, 846 (6th Cir.2000)(quoting *Davis v. Kentucky Finance Companies Retirement Plan,* 887 F.2d 689, 694 (6th Cir.1989), *cert. denied,* 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990)). *See also Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Darland v. Fortis Benefits Insurance Co.,* 317 F.3d 516, 527–528 (6th Cir.2003). In the present case, Liberty's ultimate disability determination was based upon the Functional Capacity Evaluation of Robert Pearse and the independent medical review of Dr. Soriano who both were selected by Liberty to assess Calvert's claim. As the Plan Administrator, Liberty had a clear incentive to contract with individuals who were inclined to find in its favor that Calvert was not entitled to continued LTD benefits. *See e.g., Darland,* 317 F.3d at 527–528. Considering Calvert's age, payment of this claim beyond the 24 month limitation period would be expensive for Liberty Life. Thus, there is a significant financial incentive for the carrier to terminate coverage or to deny a claim. Under the facts of this case, "the potential for self-interested decision-making is evident." *University of Hospitals of Cleveland,* 202 F.3d at 846 n. 4. Therefore, this conflict of interest will be weighed as a factor in deciding whether Liberty's decision was arbitrary and capricious.

---

**3.** The language in the Long Term Disability Income Policy provides in relevant part as follows:

**Interpretation of the Policy**

Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding.

(AR 0389).

Calvert argues that Liberty's denial decision was arbitrary and capricious because Liberty ignored Dr. Hester's opinion that Calvert was "totally disabled." Calvert argues that Liberty should be required to give deference to the opinion of her treating physician, Dr. Hester. Further, Calvert argues that Liberty was bound by the Social Security Administration's determination that she was disabled and that to justify the termination of her benefits, Liberty would have to prove a change in Calvert's medical condition. Defendant disagrees.

■ First, Plaintiff argues that a plan administrator must defer to the opinions of a claimant's treating physician unless there is substantial evidence contradicting him. In determining whether a claimant is entitled to Social Security disability benefits special weight is accorded opinions of the claimant's treating physician. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The Sixth Circuit recently adopted the "treating physician rule" for disability determinations under employee benefit plans covered by ERISA. *Darland*, 317 F.3d at 532. However, the Supreme Court in *Black & Decker Disability Plan v. Nord*, 538 U.S. ——, 123 S.Ct. 1965, 155 L.Ed.2d 1034, 2003 WL 21210418 (2003), held that plan administrators are not obliged to accord special deference to the opinions of treating physicians. *Id.* at 1967. Specifically, the Supreme Court held that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Id.* at 1971–72. As a result, the Plan Administrator did not have to credit the opinion of Dr. Hester over other evidence related to Calvert's medical condition.

■ Second, Calvert argues that the determination by the Social Security Administration that she was entitled to Social Security Disability Benefits proves that Liberty's decision was arbitrary and capricious. A Social Security Administration's disability determination is not binding on an ERISA plan administrator. *See Coker v. Metropolitan Life Insurance Co.*, 281 F.3d 793, 798 (8th Cir.2002). Nevertheless, the Court acknowledges that the Social Security Administration's decision should be considered as a factor in determining whether a plan administrator's decision denying disability benefits was arbitrary and capricious. *See Darland*, 317 F.3d at 529; *Ladd v. ITT Corp.*, 148 F.3d 753, 755–56 (7th Cir.1998). In *Darland*, the Sixth Circuit found that given the facts of that case it was inconsistent for the plan administrator to ignore the Social Security Administration's determination that the plaintiff was disabled. *Darland*, 317 F.3d at 530. However, under the facts of this case, it is not inconsistent for Liberty's disability determination with respect to Calvert to differ from the Social Security Administration's disability determination. In awarding disability benefits to Calvert, the Social Security Administration relied upon the treating physician rule and gave special deference to the opinion of Calvert's treating physician. On the other hand, in evaluating Calvert's long-term disability benefits claim under the Plan, Liberty was not required to accord special weight to the opinion of Calvert's treating physician. *See Black & Decker Disability Plan v. Nord*, 538 U.S. ——, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). The Court must examine the complete record, including the Social Security Administration's award of benefits, in determining whether Liberty's denial of benefits was arbitrary and capricious. Contrary to Plaintiff's argument, the Social Security Administra-

tion's disability determination does not in and of itself render Liberty's denial of benefits arbitrary and capricious.

Third, Calvert argues that there is no change in the medical information showing improvement of her condition to warrant a change in Defendant's decision with respect to her total disability. Under the Plan, Calvert had the burden to prove her continued disability and Liberty had the right under the Plan to reexamine the issue of disability at any time. Since Liberty's initial determination of disability, an independent medical exam, an independent medical review, a functional capacity evaluation and a transferable skills analysis were conducted.

 After a careful examination of the administrative record as well as Liberty's apparent conflict of interest, the Court concludes that Defendant's decision to deny Plaintiff's claim for long-term disability income benefits was not arbitrary and capricious. Liberty provided a legitimate reason for the denial. Contrary to Calvert's allegation, Liberty did not ignore Dr. Hester's opinion. The record reflects that Liberty considered Dr. Hester's treatment notes and other medical information at each stage of Calvert's claim and appeal. However, the record also contains evidence that contradicts Dr. Hester's ultimate opinion. Liberty's experts believed that their examinations of Calvert along with her medical records showed that Calvert was not prevented from engaging in light activity by her low back, left hip and leg pain. Specifically, relying on the physical examination of Dr. Smith, the Functional Capacity Evaluation, the Transferable Skills Analysis, and the independent medical review of Dr. Soriano, Liberty concluded that Calvert could perform "the material and substantial duties of her own occupation or other occupations...." While it is possible that the Plan Adminis-

trator could have awarded long-term disability benefits to Calvert on the evidence in the record, the fact that a contrary conclusion could have possibly been reached does not afford a basis to override the Plan Administrator's decision. *See Reed v. Wal–Mart Stores, Inc.,* 197 F.Supp.2d 883, 887 (E.D.Mich.2002). Under the arbitrary and capricious standard of review, this Court is not to substitute its judgment for that of the plan administrator. *Id.* For these reasons, the Court concludes that Liberty's decision that Calvert was not totally disabled under the Plan was not arbitrary and capricious.

Additionally, as conceded by Plaintiff, Firstar is not a proper party to this action under *Daniel v. Eaton Corp.,* 839 F.2d 263, 266 (6th Cir.), *cert. denied,* 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988). Therefore, Plaintiff's claim against Firstar is dismissed with prejudice.

### CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment on the Administrative Record [DN 12] is **GRANTED** and Plaintiff's Motion for Summary Judgment on the Administrative Record [DN 11] is **DENIED.** A judgment shall be entered consistent with this Memorandum Opinion and Order.