**Larry N. BASS, Sr., Plaintiff–Appellant,**

v.

**TRW EMPLOYEE WELFARE BENEFITS TRUST, Defendant–Appellee.**

No. 02–5768.

United States Court of Appeals, Sixth Circuit.

Jan. 21, 2004.

William L. Jenkins, Jr., Wilkerson, Gauldin, Hayes & Jenkins, Dyersburg, TN, Douglas T. Jenkins, Rogersville, TN, for Plaintiff–Appellant.

Linda J. Hamilton Mowles, Lewis, King, Krieg, Waldrop & Catron, Knoxville, TN, for Defendant–Appellee.

Before SILER and GILMAN, Circuit Judges; and BUNNING, District Judge.*

PER CURIAM.

In this ERISA action. Larry Bass appeals the district court's grant of summary judgment in favor of the plan administrator respecting the discontinuation of his long-term disability benefits. We affirm.

## BACKGROUND

Bass injured his back while on the job at the TRW manufacturing facility in Rogersville, Tennessee. After suffering his injury. Bass applied for long-term disability benefits from the TRW Employee Welfare Benefits Trust (the "Trust"), an ERISA plan (the "Plan") funded and administered by his employer, TRW, Inc. The long-term disability provision of the Plan provided a two-part definition of "disability." Under the first definition, "disability" was defined as "a medically determined disability due to injury or illness" which, "[d]uring the first 12 months from the initial date of disability, prevents you from working at your own occupation or any reasonably related occupation." The second definition defined "disability" as an injury or illness which, "[b]eginning with the 13th month from the initial date of disability, prevents you from working at any occupation for which you are or could become reasonably fitted by education, training or experience." Finding Bass disabled under the

---

* The Honorable David L. Bunning, United States District Judge for the Eastern District of Kentucky, sitting by designation.

first definition, the claims administrator—at that time Aetna Life Insurance Company ("Aetna")—awarded benefits.

The Trust changed claims administrators from Aetna to UNUM Life Insurance Corporation of America ("UNUM") in 1998. As part of the changeover, UNUM reviewed the status of on-going disability payments, including Bass's. Bass thereafter underwent a series of tests, including a Functional Capacity Evaluation and an Independent Medical Examination. In 1999, based on the results of these tests, UNUM discontinued benefits. It noted that the test reports and other evidence indicated that Bass could work the following jobs: assembler, dispatcher, maintenance service, and bench worker.

Bass appealed the discontinuation of benefits, but the Trust Administrative Committee affirmed. Bass filed suit for benefits. Reviewing under an "arbitrary or capricious" standard, the district court found it "possible to offer a reasoned explanation, based on the evidence, for TRW's conclusion that [Bass] could perform the jobs of Assembler. Dispatcher, and Bench Worker" and granted summary judgment to the Trust.

## STANDARD OF REVIEW

This court "review[s] the district court's grant of summary judgment in an action involving an ERISA claim de novo." *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir.2000).

## DISCUSSION

The first issue to be addressed is whether the district court applied the correct standard of review. It reviewed the plan administrator's decision to discontinue benefits using an "arbitrary and capricious" standard. Though the court gave no reason for applying this standard, presumably it relied on the following language from the TRW Employee Benefits Book in

effect after UNUM became claims administrator (in 1998):

> With respect to plans not provided through an insurance contract, except for long-term disability claims beginning on or after January 1, 1998 and for claims administered by Prudential HealthCare, TRW Inc., as plan administrator, has the exclusive discretionary authority to construe and to interpret the plan provisions, to decide questions of fact pertaining to eligibility for benefits and to determine the amount of such benefit. TRW's decisions on such matters are final and conclusive.

Even Bass concedes that, if applicable, this language would require that the district court apply an "arbitrary and capricious" standard in reviewing the plan administrator's discontinuation of Bass's benefits. *See Williams v. Int'l Paper Co.*, 227 F.3d 706, 711 (6th Cir.2000) ("[W]here an ERISA plan expressly affords discretion to trustees to make benefit determinations, a court reviewing the plan administrator's actions should apply the arbitrary and capricious standard of review.").

According to Bass, however, the discretionary language in the Employee Benefits Book is inapplicable, and thus review should be de novo. Bass advances two arguments in support of this contention. First, he argues that the language cannot be considered because the Employee Benefits Book was not included in the administrative record, and under well-settled case law the court cannot look beyond the administrative record in reviewing the decision of a plan administrator. Second, he argues that, even if the Employee Benefits Book can be considered, the governing document is a 1990 version of the benefits plan (which, in contrast to the post–1998 Employee Benefits Book, did not contain language giving the plan administrator discretionary authority to construe and inter-

pret the plan). Both arguments are without merit.

■ As to the first, Bass is unquestioningly correct in his assertion that a district court when reviewing a plan administrator's denial of benefits cannot look past the administrative record. *See Perry v. Simplicity Eng'g, Inc.*, 900 F.2d 963, 967 (6th Cir.1990) (stating that both de novo and "arbitrary and capricious" review "do[ ] not mandate or permit the consideration of evidence not presented to the administrator"). The case law makes clear, however, that the rule was intended to prevent the courts from looking past the *evidence of disability*—medical reports, correspondence, test results, and the like—considered by the plan administrator; it does not suggest that the rule covers the benefits plan itself, which is in the nature of a contract. *See Cassidy v. Akzo Nobel Salt, Inc.*, 308 F.3d 613, 615 (6th Cir.2002).

■ Bass's second argument also fails. It relies on an Administration/ERISA Rights handbook in effect in 1990 that does not contain language granting the plan administrator discretionary authority. Bass argues that, even if the Employee Benefits Book can be considered, the controlling language is found in the 1990 version entitled "Medical, Dental, Vision, Spending Account and Long–Term Disability Claims," which appears under the general heading "Appeals Process." In essence, Bass argues that this section (which *does not* contain language granting the plan administrator discretionary authority) controls—not the post–1998 Employee Benefits Book (which *does* contain such language)—because the discretionary language in the Employee Benefits Book does not make specific reference to long-term disability claims. Clearly, however, the section on which Bass relies does not speak to interpretation or construction of the benefits plan, but to the mechanical process of filing a claim. Moreover, the

post–1998 Employee Benefits Book *does* reference long-term disability claims, albeit several paragraphs down the page. In the final analysis, while Bass tries to construct a "genuine issue of fact" by pointing to inconsistencies in the two documents and by arguing that the earlier document controls, it is plain that the post–1998 Employee Benefits Book *replaced* the 1990 handbook. The only real difference between the two is that the Employee Benefits Book—in effect when Bass was discontinued benefits—contained the "magic words" mandating that a reviewing court apply an "arbitrary and capricious" standard of review to the plan administrator's benefits decision, while the old handbook did not.

■ Having determined that the district court applied the correct standard of review, the next question is whether the court erred in applying that standard. A fiduciary's determinations "are not arbitrary and capricious if they are rational in light of the plan's provisions." *Perry v. United Food and Commercial Workers Dist. Unions 405 and 442*, 64 F.3d 238, 242 (6th Cir.1995) (citations and quotations omitted). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Ky. Fin. Cos. Ret. Plan.* 887 F.2d 689, 693 (6th Cir.1989). In the instant case, given the results of Bass's tests, it is difficult to say that the plan administrator's determination that Bass no longer met the definition of "disabled" under the benefits plan was arbitrary or capricious. Bass's most compelling argument on this point is that he continues to receive social security disability benefits, and the definition of "disability" for purposes of social security and that for purposes of the Trust are substantially similar. Even were they identical, however, the determination of the social security administrator would not be binding on the Trust. *See, e.g., Calvert*

*v. Firstar Fin., Inc.,* 266 F.Supp.2d 578, 585 (W.D.Ky.2003) (quoting *Coker v. Metropolitan Life. Ins. Co.,* 281 F.3d 793, 798 (8th Cir.2002)).

**AFFIRMED.**