William NEELY, Plaintiff and Counter–Defendant,

v.

METROPOLITAN LIFE INSURANCE COMPANY, Defendant and Counter–Plaintiff.

No. 03–2559–DV.

United States District Court, W.D. Tennessee, Western Division.

April 7, 2004.

John E. Dunlap, Law Office of John E. Dunlap, Memphis, TN, for Plaintiff.

John J. Heflin, Bourland Heflin Alarez & Minor, Diane K. Vescovo, Office of Magistrate Judge Diane K. Vescovo, Memphis, TN, for Defendant.

## ORDER GRANTING DEFENDANT JUDGMENT ON THE ADMINISTRATIVE RECORD

DONALD, District Judge.

Plaintiff William Neely and Defendant Metropolitan Life Insurance Company both move for judgment on the administrative record as to Defendant's denial of long term disability· ("LTD") benefits to Plaintiff. Plaintiff brings this action under the

Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, claiming he is entitled to LTD benefits through his employer's insurance plan. Defendant denies that Plaintiff is entitled to LTD benefits and counterclaims for return of an alleged $11,123.22 overpayment in previous benefits. For the reasons stated herein, the Court grants judgment on the administrative record to Defendant.

## I. FINDINGS OF FACT

Home Depot U.S.A., Incorporated ("Home Depot") hired Plaintiff for the position of cashier on March 22, 1999. Plaintiff participated in the Home Depot Employee Welfare Plan ("Plan") administered by Defendant, throughout his employment with Home Depot. Plaintiff became eligible for insurance benefits on July 1, 1999, and his last day of work was October 27, 2000.

On November 1, 2000, Plaintiff applied for short term disability ("STD") benefits. Dr. Arnold Drake, Plaintiff's treating physician, submitted the Attending Physician Statement to accompany Plaintiff's request for benefits. Dr. Drake diagnosed Plaintiff with acute sinusitis, transient cerebral ischemia, and moderate limitations of psychological functioning. Defendant approved Plaintiff's request for STD benefits on November 14, 2000.

On November 27, 2000, Dr. Drake returned another Physician Statement to Defendant, in which he diagnosed Plaintiff as suffering from sinusitis, depression, and restless leg syndrome, with marked limitations in psychological functioning. On the portion of the form titled "Physical Capabilities," Dr. Drake answered the question, "[i]n your opinion why is patient unable to perform job duties?" with the word "depression." Dr. Drake's Physician Statement dated December 19, 2000 diagnosed Plaintiff only with depression. On December 21, 2000, Defendant again approved

Plaintiff for STD benefits, ending January 14, 2001.

On January 10, 2001, Dr. Drake recommended Plaintiff for temporary benefits until July 10, 2001 and referred him to a psychologist for treatment of his depression. On January 15, 2001, psychiatrist Sonny Gentry diagnosed Plaintiff as having major depression with multiple vegetative symptoms and recommended weekly psychotherapy and antidepressant medication. On January 19, 2001, Defendant approved Plaintiff's claim for STD benefits through February 18, 2001.

On February 7, 2001, Plaintiff sustained injuries to his left shoulder, back, and ankle during a motor vehicle accident. Days after the accident, Dr. Drake advised Plaintiff not to return to work due to his depression, and Dr. Gentry also diagnosed Plaintiff with major depression. Dr. Gentry left the physical abilities section of his report incomplete, save the statement "disability is psychiatric." (R. 115.)

Plaintiff submitted more documentation of his medical condition, and Defendant extended his STD benefits through March 11, 2001, and then again through April 1, 2001.

As a part of its evaluation of Plaintiff's claims for benefits, Defendant directed Dr. Ernest Gosline to review Plaintiff's medical records. Dr. Gosline expressed concern that Plaintiff's return-to-work target was three to six months, though he had no reduction of symptoms with moderate to heavy doses of medication. Dr. Gosline suggested that Plaintiff consult a psychiatrist specializing in psychopharmacology.

At the end of March 2001, Plaintiff moved to Nashville, Tennessee, where Dr. Christopher Rone began treating Plaintiff. Dr. Rone reported that Plaintiff could not currently work, but he estimated that Plaintiff might return to work on January

1, 2002, remarking, "he is on multiple medications that impair his thinking, mood and energy level. I am changing his medication to hopefully allow his return to work." (R. 70.)

On May 22, 2001, Defendant extended approval of Plaintiff's claim for STD benefits through May 24, 2001, the maximum duration of the claim under the Plan terms. At the same time, Defendant notified Plaintiff that it had received his application for LTD benefits. Plaintiff stated in his claim for LTD benefits that his conditions were "depression, TIA's, panic attacks, loose train of thought, not know where I am at times, slap tear left shoulder, no spleen/immune system a lot of infections, hard to hear and understand." (R. 85.) In the same claim for benefits, Dr. Drake reported Plaintiff could carry up to fifteen pounds 67% to 100% of the time, but he could never lift greater weights because of a "slap tear left shoulder, arthritis (degenerate), no energy, depression." (R. 83.) Dr. Drake rated Plaintiff's limitations as moderate or severe in all categories of exposure limitations (dealing with multiple allergies) and all categories of activity limitations.

Defendant's nurse consultant reviewed Plaintiff's claim file and recommended approval of LTD benefits on June 7, 2001. The approval provides:

> based on the severe clinical symptomology documented in the LTD pending package by Dr. Gentry—psychology of vegetative [symptoms], anergia, anhidonia, suicidal ideation, slow speech and [global assessment functioning] of 47, low energy low, needed encouragement to shower, shave, eat. Dr. Rone's [diagnosis] of anxiety, and extensive medication therapy reported in medical for depression by Dr. Rone in April 2001, [nurse consultant] feels medical supports [total disability] any and all at this time.

(R. 176–77.) By letter dated June 7, 2001, Defendant informed Plaintiff that it had approved his claim for LTD benefits.

On November 14, 2001, Dr. Alexander Chalko, a psychiatrist near Nashville, Tennessee, completed an Attending Physician's Statement of Functional Capacity for Plaintiff. Dr. Chalko crossed out sections concerning Plaintiff's physical capabilities and listed a primary diagnosis affecting work ability of recurrent, severe depression without psychotic features and generalized anxiety disorder. (R. 42–43.) Dr. Drake completed a similar statement on January 4, 2002, primarily diagnosing Plaintiff with depression, secondarily with fibromyalgia and restless leg syndrome. (R. 40–41.)

On October 4, 2002, Defendant wrote Plaintiff to advise him that it was terminating his claim for LTD benefits effective November 2, 2002. Upon review of the submitted medical information, Defendant indicated that Plaintiff could not work due to "major depression, severe, recurrent, without psychotic features and fibromyalgia." (R. 28–29.) Defendant concluded that those were mental/nervous disorders, and the Plan limited LTD benefit payments under such disorders to a period of twenty-four months from the onset of disability.

Following Plaintiff's request through counsel for reconsideration of Defendant's decision to terminate his LTD benefits, Defendant reviewed Plaintiff's claim. On May 8, 2003, Defendant decided to uphold its prior decision to terminate Plaintiff's LTD benefits effective November 2, 2002. Defendant cited the Plan's limitation of benefits to a maximum period of twenty-four months for mental/nervous conditions and soft tissue disorders. (R. 4–5.)

On January 22, 2003, the Social Security Administration notified Plaintiff that it was

awarding him Social Security disability benefits. (R. 21.) By letter dated February 18, 2003, the Administration awarded Plaintiff benefits of $827 per month, plus a lump sum payment of $13,354.50, representing benefits due for April 2001 through January 2003, minus attorney's fees. (R. 11–16.)

On July 30, 2003, Plaintiff filed this action, claiming Defendant wrongfully terminated his LTD benefits. Plaintiff and Defendant filed for judgment on the administrative record on January 30, 2004. On February 27, 2004, Defendant responded.

## II. STANDARD OF REVIEW

Judgment on the administrative record is an appropriate mechanism to resolve ERISA benefits claims. *See Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 619 (6th Cir.1998). The Supreme Court held that the correct standard for assessing the merits of a motion for judgment on a claim challenging the denial of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B),[1] is "de novo . . . unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

When a plan gives the administrator or fiduciary such discretionary authority, the courts review a decision to deny benefits under "the highly deferential arbitrary and capricious standard of review." *Killian v. Healthsource Provident Adm'rs, Inc.,* 152 F.3d 514, 520 (6th Cir.1998) (quoting *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 380 (6th Cir.1996)). If the deci-

sion to deny benefits is rational in light of the plan's provisions, the court must uphold the administrator's decision. *See Borda v. Hardy, Lewis, Pollard & Page,* 138 F.3d 1062, 1066 (6th Cir.1998); *Miller v. Metro. Life Ins. Co.,* 925 F.2d 979, 983 (6th Cir.1991). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Ky. Fin. Cos. Ret. Plan,* 887 F.2d 689, 693 (6th Cir.1989) (quoting *Pokratz v. Jones Dairy Farm,* 771 F.2d 206, 209 (7th Cir.1985)).

## III. ANALYSIS

### A. LTD Benefits

■ Both parties concede that the Plan grants to Defendant "discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan." (R. 220.) Therefore, the Court reviews Defendant's decision denying LTD benefits to Plaintiff under the arbitrary and capricious standard.

The Plan provides:

You are covered for 24 months of Disability, including Elimination Period(s), during your lifetime if you are Disabled due to:

1. A Mental or Nervous Disorder or Disease . . . "Mental or Nervous Disorder or Disease" means a medical condition of sufficient severity to meet the diagnostic criteria established in the current Diagnostic and Statistical Manual of Mental Disorders . . . .

2. A soft tissue disorder including, but not limited to, any disease or disorder of

---

1. "A civil action may be brought (1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a).

the spine or extremities and their surrounding soft tissue ...

(R. 210–11.)

The parties do not dispute that Plaintiff suffers from severe depression, as the Administrative Record shows numerous physicians diagnosed Plaintiff with the disease. Defendant paid disability benefits to Plaintiff for a period of twenty-four months for his disability due to depression, anxiety, and related mental and nervous conditions. (See R. 176–66.) Nor do the parties dispute that depression is a mental condition. Rather, Plaintiff now contends that he suffers from physical conditions in addition to depression, including "degenerative disc disease, fibromyalgia, fixed perfusion defects in the heart wall with scarring, hepatitis B, [and] spleen removal." (Compl.¶ 6.)

The Court finds that the medical records submitted to Defendant consistently demonstrate that Plaintiff was disabled due to depression. The records also indicate that Defendant was aware of Plaintiff's secondary conditions. Aside from Plaintiff's short term disability for acute sinusitis, none of the physician statements contained in the administrative record suggests that Plaintiff was disabled for a non-mental condition. The prevailing legal standard instructs the Court to reverse the administrator's decision only when it is not supported by the evidence. Therefore, even if the Court were to find that Plaintiff's asserted diseases were significant physical ailments, ample evidence supports Defendant's decision that Plaintiff could not work only because of depression, and the Court should not reverse.

Plaintiff argues that Defendant improperly failed to consider the Social Security Administration's disability determination, citing Darland v. Fortis Benefits Insurance Company, 317 F.3d 516 (6th Cir. 2003). The Court in Darland, reversing judgment for an ERISA plan administrator, found that it was inconsistent for a plan administrator to "ignore the Social Security Administration's determination" that the plaintiff was disabled when the administrator had requested that the plaintiff "apply for Social Security disability benefits so as to reduce the amount of monthly disability payments." Id. at 530. The court found that the principles of judicial estoppel, "[t]hough not directly applicable in [that] case," weighed against the administrator being permitted to take such inconsistent positions. Id.

The Court notes that Darland has not been favorably received since its publication. See, e.g., Black & Decker Disability Plan v. Nord, 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003) (overruling, in an opinion by a unanimous Court, the Darland Court's holding that a plan administrator should defer to the opinion of a treating physician); Calvert v. Firstar Fin., Inc., 266 F.Supp.2d 578 (W.D.Ky. 2003) (calling into doubt the Darland Court's language that a plan administrator should defer to a Social Security disability determination); Hurse v. Hartford Life & Accident Ins. Co., 77 Fed.Appx. 310, 316–18, 2003 WL 22233532 (6th Cir.2003) (considering Darland in detail and holding that a plan administrator need not consider a Social Security disability determination).

Moreover, the instant case does not present a situation where the Social Security disability determination is inconsistent with the plan administrator's decision. Defendant does not dispute that Plaintiff has a real, identifiable, severe illness. Defendant instead disputes coverage according to the nature of Plaintiff's injury. Within its broad discretion under the Plan, Defendant has chosen to cover mental and physical illnesses to varying degrees. In contrast to the obligatory, nationwide Social Security program, "[n]othing in

ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996). Therefore, the Social Security Administration's disability determination is not based upon the same factors or information as is Defendant's LTD benefits determination. The Court need not defer to the Social Security determination, especially in this situation where the determinations are not mutually exclusive.

Under the prevailing legal standard, the Court finds a rational basis for Defendant's holding that Plaintiff was disabled solely by a mental/nervous condition. Accordingly, the Court grants judgment to Defendant, affirming its determination as Plan administrator.

### B. Overpayment of Benefits

█ Defendant requests judgment in the amount of $11,123.22 on its counterclaim for over-payment of LTD benefits to Plaintiff. The Plan provides:

> If at any time we determine that the total amount paid on a claim is more than the total amount due, including any overpayment resulting from retroactive awards received from the sources listed in Other Income Benefits, we have the right to recover the excess amount from the person to whom such payment was made.

(R. 198.) The Plan defines Other Income Benefits to include disability and retirement benefits received under the United States Social Security Act. (R. 208–09.) In connection with the approval of Plaintiff's application for disability benefits, Defendant agreed to pay Plaintiff a larger monthly benefit, calculated without regard to amounts payable to him under the Social Security Act, on the condition Plaintiff agreed to repay to Defendant any overpayment resulting from the award. (R. 96.) Defendant paid Plaintiff LTD benefits in full without subtracting for Social Security benefits.

Defendant requested reimbursement of the total overpaid LTD benefits through letters dated April 28, 2003, (R. 7–8), and June 11, 2002, (R. 2–3). Plaintiff has not paid Defendant to date. Neither has Plaintiff made any arguments why Defendant is not entitled to repayment of the surplus benefits. Plaintiff did not address the issue of overpayment in his motion or file a response to Defendant's motion. For good cause shown, the Court grants judgment to Defendant on the issue of overpayment. Plaintiff is directed to pay $11,123.22 to Defendant.

## IV. CONCLUSIONS OF LAW

Defendant's decision denying long term disability benefits to Plaintiff is supported by substantial evidence and affirmed by the Court. Accordingly, the Court **GRANTS JUDGMENT** to Defendant and hereby directs Plaintiff to remit to Defendant overpayment of $11,123.22.