105 F.3d 659
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Bonnie FULLER, Plaintiff-Appellant,
v.
RETIREMENT PLAN FOR SALARIED EMPLOYEES OF BROWN & WILLIAMSON
TOBACCO CORPORATION AND CERTAIN AFFILIATES, et
al., Defendants-Appellees.
 No. 96-5191.
 United States Court of Appeals, Sixth Circuit.
 Jan. 10, 1997.
 
 Before: LIVELY, NELSON, and RYAN, Circuit Judges.
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 This is an appeal from a summary judgment in favor of the defendant retirement plan and its administrator in a suit brought by a person seeking disability benefits under the plan. We are called upon to decide two questions: (1) whether the administrator's decision to deny benefits should be reviewed by the courts under a conventional "arbitrary and capricious" standard, and (2) whether the decision passes muster under the appropriate standard of review. Answering both questions in the affirmative, we shall affirm the judgment entered by the district court.
 
 
 2
 * The plaintiff, Bonnie Fuller, was employed by Brown & Williamson Tobacco Corporation from 1977 through 1991. For the last 15 months of her tenure with the company Mrs. Fuller held the job of benefits specialist and human resources systems coordinator. Her supervisor in this position was Denise Bomersbach; her manager, according to the complaint, was Craig Matta.
 
 
 3
 Early in August of 1991 Supervisor Bomersbach issued a performance appraisal covering Mrs. Fuller's first ten months in the specialist/coordinator position. The appraisal described several aspects of the job in which there was room for improvement, and stated that "[a] significant improvement in her overall performance is expected within 90 days." The form required the evaluator to check one of five "Performance Rating" boxes: "Provisional, Adequate, Effective, Commendable, and Distinguished." Ms. Bomersbach checked the "Adequate" box.
 
 
 4
 Upon receipt of this disappointing performance appraisal, Mrs. Fuller requested a transfer to another department. One day later--apparently because of the headaches and sleeplessness that had been plaguing her for some time--she stopped coming to work. Soon thereafter, at her request, the company put her in its salary continuation program.
 
 
 5
 Mrs. Fuller started seeing a psychiatrist, Dr. Daniel A. Borders, and she went into the hospital for a two-week stay beginning September 20, 1991. On October 17, 1991, following the patient's release from the hospital, Dr. Borders wrote Brown & Williamson that Mrs. Fuller was suffering from "Major Depression" and was "unable to return to her current work environment at this time." Dr. Borders went on to express the following opinion, however:
 
 
 6
 "If she were to have a transfer out of her current department, she could return to work in two (2) weeks without restrictions or limitations. If she were to return to the same department, her date of return is yet to be determined."
 
 
 7
 A second psychiatrist, Dr. Emily J. Stapp, saw Mrs. Fuller at the company's request in November of 1991. Dr. Stapp's impression was that the patient had "Major depression single moderate w/o psychosis, Generalized anxiety disorder." Based on Mrs. Fuller's prior stable work history, Dr. Stapp urged Brown & Williamson to assign her to a job in which she would work under a different supervisor. "I do believe that she could be a very productive worker again," Dr. Stapp wrote, "... if the environment were one which was conducive to cooperation and resolution of problems as they occur on the job. I do believe that she will be able to go back to work under a different situation and if the environment was conducive to that situation."
 
 
 8
 In December of 1991 the company ended Mrs. Fuller's salary continuation payments and directed her to return to work on pain of dismissal. Mrs. Fuller did not return to work, and her employment was terminated effective December 31, 1991.
 
 
 9
 In May of 1992, one day after she received a Social Security Administration decision awarding social security disability benefits on the strength of a finding that she had become disabled in August of 1991, Mrs. Fuller applied for disability benefits under the Brown & Williamson retirement plan. The terms of the plan were such that her eligibility for benefits turned on a determination that while still a salaried employee of Brown & Williamson--i.e., prior to December 31, 1991--she had become unable
 
 
 10
 "to engage in any substantial gainful activity for which [she] is reasonably fitted by age, training, education and experience, by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."
 
 
 11
 The plan administrator (an administrative committee of which Craig Matta was apparently a member and for which he served as secretary) determined in October of 1992 that Mrs. Fuller did not come within the language quoted above. In making this determination the committee reviewed both the decision of the Social Security Administration and all available medical information, including records of Mrs. Fuller's 1991 hospitalization and a second hospitalization that occurred in January of 1992, after her employment had been terminated.
 
 
 12
 Mrs. Fuller was told that she could request reconsideration of the committee's decision, and she did so in December of 1992. Additional medical information was submitted in this connection, including a letter from Dr. Borders dated March 15, 1993. The letter stated that it had become apparent that a return to work was not possible for Mrs. Fuller. "It is obvious," Dr. Borders' letter continued, "that her disability began with her hospital admission in September, 1991." Notwithstanding Dr. Borders' reassessment of the situation, the committee decided in May of 1993 to adhere to its original determination that during the time she was a Brown & Williamson employee Mrs. Fuller had not been unable to engage in any substantial gainful activity by reason of an impairment that could be expected to last at least 12 months.
 
 
 13
 In November of 1994 Mrs. Fuller sued the retirement plan and the committee under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA"). The defendants ultimately moved for summary judgment, and their motion was granted in November of 1995. The district court later denied a motion to alter or amend the judgment, and this appeal followed.
 
 II
 
 14
 In an action challenging an ERISA plan administrator's decision to deny benefits, the decision is reviewed by the courts de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 380 (6th Cir.1996), quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). When the benefit plan gives the administrator discretionary authority of this type, the more deferential "arbitrary and capricious" standard applies. Id.
 
 
 15
 In the case at bar the district court reviewed the denial of benefits de novo, the court having concluded that the plan "does not give the administrators authority to construe ambiguous terms or make final and conclusive eligibility determinations." We disagree with the court's conclusion as to the administrator's authority.
 
 
 16
 If the Brown & Williamson plan means what it says, it gives the administrative committee the "power and discretion ... to construe all terms, provisions, conditions and limitations of the Plan." (Emphasis supplied.) The committee is also given the "power and discretion ... to determine all questions arising out of or in connection with the provisions of the Plan or its administration in any and all cases in which the Administrative Committee deems such a determination advisable." The plan expressly gives the committee authority to make "a finding of disability," and it states that "the decisions or actions of such Committee in good faith in respect of any matter hereunder shall be conclusive and binding upon all parties concerned." It seems to us that these provisions clearly give the plan administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan" within the meaning of those words as used by the Supreme Court in Bruch.
 
 
 17
 Mrs. Fuller does not disagree, but she argues that a "less deferential arbitrary and capricious standard" should be applied in this case because the administrative committee was made up of Mrs. Fuller's "ex-supervisors." These supervisors, she maintains, had a conflict of interest that necessitates modification of the usual "arbitrary and capricious" standard. We do not find the argument persuasive.
 
 
 18
 There is no indication in the record that Denise Bomersbach, the supervisor with whom Mrs. Fuller had difficulty, was ever a member of the administrative committee. Although Craig Matta, whom the complaint describes as Mrs. Fuller's "manager," apparently was a member of the committee, we have seen no indication that Mr. Matta had any conflict of interest. In any event, he was only one member of the committee; the complaint indicates that there were six other members. We see no reason why the "arbitrary and capricious" standard of review should be modified in this case.
 
 III
 
 19
 An ERISA plan administrator's denial of benefits is not arbitrary and capricious as long as it is "rational in light of the plan's provisions." Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 984 (6th Cir.1991), quoting Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir.), cert. denied, 488 U.S. 826 (1988). And when reviewing a denial of benefits under the arbitrary and capricious standard, this court should "consider only the facts known to the plan administrator at the time he made his decision." Yeager, 88 F.3d at 381. In light of the plan provisions and the medical evidence available to the committee in Mrs. Fuller's case, we are satisfied that the decision to deny disability benefits here was rational.
 
 
 20
 In the Brown & Williamson plan, as we have seen, the word "disability" is defined in terms of an inability to engage in "any substantial gainful activity for which the participant is reasonably fitted...." (Emphasis supplied.) The fact that Mrs. Fuller may have been unable to return to a job in which she would be supervised by Denise Bomersbach is not controlling, and the company had no obligation to find an alternative job for her. See Block v. Pitney Bowes Inc., 952 F.2d 1450, 1455 (D.C.Cir.1992). Mrs. Fuller's own psychiatrist, Dr. Borders, stated unequivocally on October 17, 1991 that "[i]f she were to have a transfer out of her current department, she could return to work in two (2) weeks without restrictions or limitations." This hardly sounds like an inability to engage in "any" substantial gainful activity. The committee could have accepted Dr. Borders' 1993 repudiation of his 1991 opinion, of course, but it was not bound to do so.
 
 
 21
 A temporary inability to engage in any substantial gainful activity, moreover, does not constitute a "disability" under the terms of the Brown & Williamson plan. For Mrs. Fuller to have qualified as a disabled employee under the plan, it would have had to be shown that the allegedly disabling depression from which she suffered (1) could be expected to result in her death, (2) had lasted for a continuous 12-month period during her tenure as an employee, or (3) could be expected to last for a continuous 12-month period. Mrs. Fuller does not claim that she meets either of the first two conditions, and it was not irrational for the committee to decide that she had not met the third condition either. The expectation of an ongoing disability that would last at least 12 months in the future had to arise before December 31, 1991, and it was reasonable for the committee to conclude that no such expectation had arisen during the relevant time period.
 
 
 22
 Although the Social Security Administration did find that Mrs. Fuller suffered from a disability that began in August of 1991, that finding was not made until well after the employment relationship had ended. More significantly, perhaps, it is clear that the administrative committee, which had the power to construe and interpret the Brown & Williamson plan, was not bound by what the Social Security Administration found. See Anderson v. Operative Plasterers' and Cement Masons' Int'l Ass'n Local No. 12 Pension & Welfare Plans, 991 F.2d 356, 358 (7th Cir.1993). Neither the initial decision of the administrative committee nor the decision on reconsideration was irrational, in our view. The judgment in favor of the defendants must therefore be, and it hereby is, AFFIRMED.