**James R. HURSE, Dr., Plaintiff–Appellant,**

v.

**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, and Columbia/HCA Healthcare Corporation Long Term Disability Plan, Defendant–Appellee.**

No. 02–5496.

United States Court of Appeals, Sixth Circuit.

Sept. 26, 2003.

Eric L. Buchanan, Eric Buchanan & Associates, Chattanooga, TN, for Plaintiff–Appellant.

Rodney A. Fields, Janet Strevel Hayes, Lewis, King, Krieg, Waldrop & Catron, Knoxville, TN, John Roy Tarpley, Lewis, King, Krieg, Waldrop & Catron, Nashville, TN, for Defendant–Appellee.

Before BATCHELDER and ROGERS, Circuit Judges; and RUSSELL,* District Judge.

BATCHELDER, Circuit Judge.

Plaintiff Dr. James Hurse appeals from the district court's order granting summary judgment to Defendant Hartford Life and Accident Insurance Company ("Hartford") in Hurse's action pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), challenging the Plan Administrator's denial of his claim for payment of long-term disability ("LTD") benefits. Hurse argues that Hartford should have applied the "treating physician rule" to his ERISA claim; that Hartford's decision denying benefits was unsupported and inconsistent throughout the determination process; and that Hartford failed to give proper consideration to the Social Security Administration's (SSA) finding of

---

* The Honorable Thomas B. Russell, District Judge, United States District Court for the Western District of Kentucky, sitting by designation.

disability for the same medical condition for which he claims benefits under the plan. Because we find, after the Supreme Court's recent decision in *Black & Decker Disability Plan v. Nord,* 538 U.S. 1965, 123 S.Ct. 1965, 155 L.Ed. 1034 (2003), that the treating physician rule is inapplicable in ERISA cases, and we conclude that the district court did not err in holding that Hartford's decision denying benefits is not arbitrary or capricious and is supported by sufficient evidence, we will AFFIRM the judgment of the district court.

## PROCEDURAL HISTORY

Dr. Hurse, who worked as an emergency room physician for Columbia/HCA Healthcare Corporation and as a clinic physician at Columbia/HCA Hendersonville Clinic, received coverage under an employer-provided group long-term disability policy issued and administered by Hartford. Hurse submitted a claim for LTD benefits after being hospitalized in March of 1996 with symptoms that were initially diagnosed as a possible stroke. Hartford denied the plaintiff's first claim, finding that Hurse's possible disability arose from his diabetes, and was therefore excluded as a pre-existing condition. The plaintiff appealed the decision and supplied additional evidence supporting his claim. In March of 1999, Hartford declared Hurse disabled from August 24, 1996, through August 23, 1998, which was the end of the two year "own occupation" disability period provided in the plan.[1] Hurse then submitted additional medical documentation supporting his claim for "any occupation" disability benefits. Hartford issued an initial denial for "any occupation" benefits in May of 1999, but ad-

vised Hurse in February, 2000, that he might be eligible for disability benefits based upon mental illness. Following an independent medical examination in September of 2000, Hartford determined that Hurse was disabled due to mental illness and, under the terms of the policy, entitled to only twenty-four months of LTD benefits. Since Hurse had already received twenty-four months of LTD benefits under the "own occupation" provision of the policy, Hartford made no further payment on his claim.

Pursuant to 29 U.S.C. § 1132(a)(1)(B), Hurse sought judicial review of Hartford's decision denying LTD benefits under ERISA. The district court granted Hartford's motion for summary judgment, and affirmed the decision of the Plan Administrator. Hurse's timely appeal followed.

## FACTUAL BACKGROUND

The parties do not dispute that Dr. Hurse is disabled, that the terms of the group policy limit disability benefits for mental illness to twenty-four months, that mental illness under the policy does not include structural brain damage, or that benefits for disability due to structural brain damage are not subject to the twenty-four month limitation governing disability due to mental illness. The only issue before this court, therefore, is whether Hartford was arbitrary and capricious in its determination that Hurse's disability stems from mental illness–for which LTD benefits are no longer available–instead of from structural brain damage–for which further LTD benefits are available. Our resolution of this issue requires an understanding of Hurse's medical history and evaluations prior to Hartford's final denial

---

1. Under the terms of the Hartford policy, "own occupation" disability means an inability to perform all the material and substantial duties of the claimant's occupation at the time of the disability. These benefits are provided for only two years, after which time a claimant must show "any occupation" disability, that is, that he is unable to perform any job.

of LTD benefits, and our summary of that history therefore requires some detail.

| | |
|---|---|
| March 1996 | Hurse checked into St. Thomas Hospital, complaining of stroke-like symptoms. Dr. Michael Kaminski, who became the plaintiff's first treating neurologist, reported that a CT scan of Hurse's head was normal; an MRI of his brain showed no signs of cerebral infarction, though it suggested perhaps slow flow in the left middle cerebral superior division; and subsequent angiography was completely normal. Dr. Kaminski urged Hurse to be aggressive with management of his diabetes. |
| March 1996 | Dr. Kaminski continued to treat Hurse, noting Hurse's slow, methodical speech. |
| March 1997 | memory problems, aphasia (trouble finding words), and depression. |
| March 1997 | Hurse was referred to Dr. Gary Solomon for a neuropsychological evaluation. Hurse tested with a full scale IQ of 80, a verbal IQ of 87, and a performance IQ of 74. On the Rey 15 Memory Test, Hurse scored 7/15, which is positive for potentially malingered memory deficits, but scored 35/36 on the Abbreviated Hiscock Forced Choice Procedure, which is negative for frankly malingered memory deficits. Dr. Solomon concluded that the overall results did not suggest that Hurse had suffered a stroke. Dr. Solomon did indicate that the results could suggest an advanced case of vascular dementia,[2] but that there were inconsistencies within the data to argue against such a diagnosis. Dr. Solomon concluded his evaluation by stating, "[p]sychological issues are germane and there is evidence of depression and somatization. Access to medications may be of concern given his elevated substance abuse index." |
| May 1997 | Hurse came under the care of neurologist Dr. Jimmy Wolfe, whose initial impressions were that Hurse had suffered a transient ischemic attack (TIA) or cerebral vascular accident (CVA), with "[d]ementia, unspecific cause," as well as "[p]rogressive probable depression and generalized peripheral neuropathy secondary to severe insulin-dependent diabetes." |
| June 1997 | Dr. Wolfe stated that he believed Hurse's dementia "was unmasked in 3/96 by whatever happened." Dr. Wolfe went on to say that he did not have an etiology for the dementia's being explained on the basis of Hurse's diabetes. "This would have been a microvascular dementia which would have been essentially a lot of small strokes cumulatively causing a dementia. He |

does not have this." Dr. Wolfe admitted that he was not entirely sure of Hurse's proper diagnosis.

| | |
|---|---|
| Sept. 1997 | Dr. J. William Varner performed a psychiatric evaluation of Hurse, noting dementia with delusional thinking, diabetes mellitus, hypertension, and a history of CVA. |
| Sometime | Neurologist Victor Robert reviewed Hurse's file and, from a neurological standpoint, |
| in 1999 | was "unable to identify proper documentation to support [Hurse's] claim of permanent disability." |
| Feb. 1999 | Dr. Anthony Scarcella, at the request of Hartford, completed a comprehensive review of Hurse's file. Dr. Scarcella concluded that Hurse was not disabled due to any identifiable medical problem other than mental/nervous etiology, noting that only Dr. Wolfe seemed to think there was a real medical problem, but that Hurse refused further testing requested by Dr. Wolfe. |
| Feb. 1999 | Dr. Wolfe stated that the most likely etiology of Hurse's difficulties would be microvascular and that the MRA revealed "some low flow to the left hemisphere, and this may be somewhat of a contributing factor." |
| June 1999 | Dr. Raymond Fuller, an orthopedic doctor, attributed Hurse's significant limitations to a stroke in 1996. |
| June 1999 | Dr. Wolfe diagnosed Hurse with CVA, Dementia, and Diabetic Neuropathy. |
| Dec. 1999 | Dr. Todd Lyon, at the request of Hartford, completed a comprehensive review of Hurse's medical record. Dr. Lyon concluded, after considering Dr. Wolfe's opinion that Hurse suffers from dementia, that there was no evidence to support the notion that Hurse had any medical conditions causing his cognitive impairments. Dr. Lyon stressed Hurse's history of uncontrolled diabetes and practice of prescribing himself narcotic pain medications. |
| Sept. 2000 | Hurse specifically claimed that his disability stems from an organic brain disorder and submitted to an independent medical examination by Dr. William Bernet, Director of Vanderbilt Forensic Psychiatry. Following a three-hour interview and a comprehensive review of Hurse's medical file, Dr. Bernet concluded that the most likely explanation for Hurse's cognitive difficulties was malingering. Dr. Bernet did not believe there was any physical or neuro- |

2. Hurse now argues he is suffering from vascular dementia, which would be an organic brain defect, enabling him to receive LTD benefits. See infra.

logical cause for Hurse's problems. He was unaware of any organic etiology to explain Hurse's psychological deficits, but noted that he would prefer to rely upon a neurologist to provide the final answer on the question of organic causes.

Dr. Hurse has not returned to any type of employment following his initial hospitalization in 1996. While Hartford processed and evaluated Hurse's claim, Hurse pursued disability benefits from the Social Security Administration. In June of 1999, an SSA Administrative Law Judge ("ALJ") found Hurse totally disabled due to dementia with delusional thinking, diabetes mellitus, hypertension, and a history of CVA. Hartford asserts that it reviewed the SSA file and the ALJ's decision–along with all of the medical reports and diagnoses in Hurse's file–in arriving at the decision to deny Hurse's claim for LTD benefits.

## ANALYSIS

### Standard of Review

The correct standard for assessing the merits of a motion for summary judgment on a claim challenging the denial of benefits under 29 U.S.C. § 1132(a)(1)(B), the Supreme Court has long since decreed, is "*de novo*... unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). When a plan gives the administrator or fiduciary such discretionary authority, the courts review a decision to deny benefits under "the highly deferential arbitrary and capricious standard of review." *Killian v. Healthsource Provident Adm'rs, Inc.,* 152 F.3d 514, 520 (6th Cir.1998) (quoting *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 380 (6th Cir.1996)). Here, both parties concede that the plan at issue clearly grants to Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the group insurance policy," and that Hartford's decision denying LTD benefits to Hurse is properly reviewed, both by the district court and by this court, under the arbitrary and capricious standard. Therefore, if the decision to deny benefits is rational in light of the plan's provisions, the court must uphold the administrator's decision. *Borda v. Hardy, Lewis, Pollard & Page, P.C.,* 138 F.3d 1062, 1066 (6th Cir.1998); *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 983 (6th Cir.1991).

On appeal, Hurse argues that Hartford has a conflict of interest, and we are therefore required to apply a heightened level of scrutiny in determining whether the decision denying benefits is arbitrary and capricious. With regard to the decision itself, Hurse claims that it is arbitrary and capricious for three reasons: (1) the conclusions on which the denial of benefits was based are contrary to the conclusions reached by Hurse's treating neurologist; (2) Hartford provided contradictory and incomplete reasons for denying Hurse benefits; and (3) the denial was contrary to the decision of the SSA finding disability.

### Treating Physician Rule

Hurse contends that Hartford's failure to apply the "treating physician rule" used by the courts in the Social Security context resulted in an arbitrary and capricious decision denying benefits. Under the "treating physician rule" Hartford would have accorded greater weight in the decision-making process to the opinion of Hurse's treating neurologist, Dr. Wolfe, than to the contrary opinions of consulting physicians. According to Dr. Wolfe, Hurse suffered from disabling limitations resulting from an organic cause. When the parties filed their briefs in this case, we had yet to

determine whether the "treating physician rule" used by the courts in the Social Security benefit context, *see* 20 CFR §§ 404.1527(d)(2), 416.927(d)(2) (2002); *see also Walker v. Sec'y of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir.1992), applied to benefit decisions made by administrators of ERISA-governed plans.

█ That issue has now been settled. Reversing a Ninth Circuit case that had applied the "treating physician rule" in an ERISA case–and thus abrogating this circuit's very recent holding to the same effect in *Darland v. Fortis Benefits Ins. Co.,* 317 F.3d 516, 532 (6th Cir.2003)–the Supreme Court held in *Black & Decker* that the "treating physician rule" does not apply in ERISA cases and that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker,* 538 U.S. at ――, 123 S.Ct. at 1972. Noting that the Secretary of Labor's regulations "do not instruct plan administrators to accord extra respect to treating physicians' opinions," *id.* at 1970, and that critical differences exist between the Social Security disability program and ERISA benefit plans, the Court found that the legislature or superintending administrative agency is in the best position to address the question of how to weigh the reports of various physicians. *Id.* at 1971. In light of the Supreme Court's decision in *Black & Decker,* Hurse's claim that Hartford's decision denying LTD benefits is arbitrary and capricious because Hartford failed to use the "treating physician rule" is without merit.

*Hartford's Unsupported Rationale and Contradictory Reasons for Denial*

Hurse next argues that the arbitrary and capricious nature of Hartford's denial of LTD benefits is demonstrated by the fact that over time, as more medical evidence became available, Hartford's determinations regarding his eligibility for benefits changed. Initially, Hartford denied Hurse's request for disability on the basis of Hurse's pre-existing diabetes, but later, after Hurse provided additional medical evidence, Hartford determined that Hurse was in fact disabled–under the terms of the group policy–for his "own occupation" period. Upon further review of additional medical evidence, Hartford initially determined that Hurse was not entitled to LTD benefits for "any occupation" disability, but that, following additional review, Hurse might be eligible for disability benefits based upon mental disease. Finally, after Hurse submitted to an independent medical examination, Hartford conclusively declared Hurse ineligible for any further disability benefits.

█ Hurse describes this process as irrational and evidence that Hartford acted arbitrarily and capriciously, but we think that Hartford's decision-making process in this case was eminently rational in light of the constantly expanding medical record. Importantly, even if Hartford's continuing re-evaluation of Hurse's medical condition were somehow suspect, this extended decision-making process does not undermine the final eligibility determination made by Hartford, which was based upon numerous and reliable medical opinions. Although Dr. Wolfe's medical diagnosis contradicts Hartford's final decision, Hartford relied upon significant medical documentation in determining that Hurse's disability did not stem from an organic brain condition, but rather, was caused by psychological factors. Because Hartford was not required to apply the "treating physician rule," it

was not required to defer to Dr. Wolfe's opinion, and there is more than sufficient evidence in this record to support the determination that Hurse did not suffer from structural brain damage. This circuit has long held that "[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (quoting *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir.1985)).

Hurse further argues that Hartford's findings are contradicted by the very medical evidence it relied upon. In particular, Hurse stresses that Dr. Bernet–who performed the independent medical examination and concluded that the most likely explanation for Hurse's disability was malingering–stated that he could not state a diagnosis with a reasonable degree of medical certainty. Additionally, Dr. Solomon–who noted that Hurse's condition was not consistent with a focal left hemispheric stroke and that Hurse's medical data presented some inconsistencies–did not rule out an organic cause for Hurse's impairment. Looking at all of the evidence, however, and in particular Dr. Wolfe's differing diagnoses and Dr. Kaminski's (Hurse's original treating neurologist) belief that Hurse suffered from psychiatric disorder and not an organic defect, we believe that Hartford's decision denying benefits was rational in light of the plan's provisions, and therefore not arbitrary and capricious.[3] *Borda*, 138 F.3d at 1066.

*Social Security Administration's Finding of Disability*

Hurse argues before us that, although Hartford is not bound by the SSA's determination that he is disabled as a result of an organic brain disorder, Hartford's decision is arbitrary and capricious in light of the SSA's contrary conclusion. We think it is clear from Hurse's brief and argument, however, that the gist of his position is that Hartford was not free to come to a conclusion contrary to that reached by the SSA. Prior to this court's opinion in *Darland*, unpublished opinions in this circuit stated that an administrator of an ERISA plan was not bound by a disability determination made by the SSA. *See e.g., Fuller v. Retirement Plan for Salaried Employees of Brown & Williamson Tobacco Corp.*, No. 96–5191, 1997 WL 10952, 1997 U.S.App. LEXIS 717 (6th Cir. Jan. 10, 1997) (unpublished). However, this court in *Darland* recognized a situation in which the SSA determination on benefits should carry significant weight: The panel found that it was inconsistent for a plan administrator to "ignore the Social Security Administration's determination" that the plaintiff was disabled when the administrator had requested that the plaintiff "apply for Social Security disability benefits so as to reduce the amount of monthly disability payments." *Darland*, 317 F.3d at 530. The court found that the principles of judicial estoppel, "[t]hough not directly applicable in [that] case," weighed against the administrator's being permitted to take such inconsistent positions. *Id.*

The court in *Darland* relied upon a Seventh Circuit case, *Ladd v. ITT Corp.*, 148 F.3d 753 (7th Cir.1998), for the proposition that the judicial estoppel concept can apply in a case where a plan administrator helps an employee gain Social Security benefits

---

**3.** By way of comparison, this court found an administrator's decision to end LTD benefits to be arbitrary and capricious when "virtually all of the evidence in the administrative record" supported a disability finding, but the administrator relied upon an incomplete and inaccurate report from a vocational consultant and denied continued benefits. *Spangler v. Lockheed Martin Energy Sys.*, 313 F.3d 356, 362 (6th Cir.2002).

(including hiring legal counsel for the employee in hopes of securing Social Security benefits), but then attempts to deny disability benefits under an ERISA plan for the same impairment. In *Ladd*, none of the examining physicians had found that the plaintiff was capable of working, and the plaintiff's condition worsened before the plan administrator rejected the plaintiff's claim for benefits, but after the SSA had already granted him disability benefits. *Id.* at 755–56.

■ In the present case, although Social Security disability benefits are "other income benefits" deducted from the amount of disability benefits payable under the group plan, there is no evidence in the record that Hartford requested that Hurse apply for his Social Security benefits. Hartford did express its desire to be fully informed of all action taken by the SSA in this case, and although it did not address the SSA determination in its final letter denying Hurse's benefits, Hartford maintains that it reviewed the SSA file and the ALJ's determination that Hurse is disabled due to an organic mental disorder. Unlike *Ladd* and *Darland*, this is not a case in which there is evidence that the plan administrator urged or aided the claimant in his pursuit of Social Security benefits. And it is important to note that the decision in *Darland* was clearly based upon the application of the treating physician rule, and, in the alternative, upon the "substantial evidence" showing that the defendant's denial of benefits was arbitrary and capricious. *See Darland*, 317 F.3d at 533. Accordingly, we do not feel the dicta in *Darland* regarding the weight to be afforded to the SSA's determination of disability is controlling in this case.

The Supreme Court's decision in *Black & Decker*, however, is useful in examining this issue. To begin with, it would be incongruous to hold that, although the "treating physician rule" is not applicable in ERISA cases, the ERISA plan administrator is bound by the disability determination of the SSA, which is required to apply that rule. That aside, the Supreme Court's reasoning in concluding that ERISA did not require special deference to a treating physician stressed the differences between the Social Security disability program and ERISA benefit plans. *See Black & Decker*, 538 U.S. at ——––——, 123 S.Ct. at 1971–72. As the Court noted:

> In contrast to the obligatory, nationwide Social Security program, "nothing in ERISA requires employers to establish employee benefit plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887, 116 S.Ct. 1783, 135 L.Ed.2d 153, (1996). Rather, employers have large leeway to design disability and other welfare plans as they see fit. In determining entitlement to Social Security benefits, the adjudicator measures the claimant's condition against a uniform set of federal criteria. "The validity of a claim to benefits under an ERISA plan," on the other hand, "is likely to turn," in large part, "on the interpretation of terms in the plan at issue." *Firestone Tire*, 489 U.S., at 115, 109 S.Ct. 948, 103 L.Ed.2d 80.

*Black & Decker*, 538 U.S. at ——, 123 S.Ct. at 1971. We think that the same reasoning is pertinent to our determination of how much weight an ERISA plan administrator must give an SSA finding of disability. Certainly there is no evidence in the record before us here that the terms of the group policy administered by Hartford were intended to be interpreted according to the federal criteria governing SSA disability determinations, and Hurse does not dispute the fact that the plan

gives to Hartford the discretion to interpret the terms of that policy.

Finally, we think it is worth noting that if the ALJ's finding of disability were before us for judicial review, our function would be to determine whether the finding is supported by substantial evidence, which we have defined as

> more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Furthermore, we must defer to an agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ."

*Foster v. Halter,* 279 F.3d 348, 353 (6th Cir.2001) (citation omitted). Hence, the SSA's finding does not need to be the only reasonable conclusion that the evidence could support, and may, in fact, be one of several inconsistent conclusions, so long as it is supported by enough relevant evidence to convince a reasonable mind. Similarly, the arbitrary and capricious standard of review that we use in the case before us here requires us to hold that the determination of the plan administrator is not arbitrary and capricious so long as it is "possible to offer a reasoned explanation, based on the evidence, for [that determination]." *Davis,* 887 F.2d at 693. The fact that the evidence might also support a contrary conclusion is not sufficient to render the plan administrator's determination arbitrary and capricious. The medical evidence in this case was clearly susceptible to opposite conclusions as to the nature of Hurse's disability. Measuring that evidence against the SSA's uniform criteria, the ALJ came to one conclusion. Measuring that evidence against the terms of the ERISA plan, Hartford came to a different conclusion. Hartford's conclusion is rea-

sonable and is based on the evidence, and the fact that it differs from that of the ALJ does not make it arbitrary and capricious.

Hurse further contends that we must hold that Hartford's decision is arbitrary and capricious because Hartford's final letter denying benefits mentions neither the SSA records nor the ALJ's finding of disability. Hurse argues that Hartford was required both to consider the SSA disability findings and to explain its reasons for disregarding them. Hurse points to no evidence to support his contention that Hartford did not consider those findings, and we have found none in the record. He points to no authority to support his contention that Hartford was required to explain why it did not adopt them, and, again, we have found none. We are not persuaded that Hartford's silence with regard to the SSA record and findings is evidence that it did not consider them, and indeed, Hartford represents that it did consider them.

We conclude that Hartford has presented sufficient evidence to show that the denial of LTD benefits to Hurse was not arbitrary and capricious *under the terms of the plan.*

*Conflict of Interest*

Finally, Hurse argues that a higher level of scrutiny is required in this case because of Hartford's inherent conflict of interest as plan administrator and benefit provider. Although we take this inherent conflict into account as we decide this case, the conflict alone is not enough to undermine all of the medical evidence in the record supporting Hartford's decision. Along with the inherent structural conflict presented in this case, the plaintiff must provide some specific evidence suggesting that Hartford acted in bad faith. *See Peruzzi v. Summa Med. Plan,* 137 F.3d 431, 433 (6th Cir.1998) (stating that where the

record contained no significant evidence that the plan's administrator based its determination on costs or otherwise acted in bad faith, the court could not conclude that defendant was motivated by self-interest). Hurse has provided no such evidence, and in the absence of any evidence of bad faith, applying a heightened level of scrutiny to our review under the arbitrary and capricious standard, we find that the defendant's decision denying LTD benefits was not arbitrary and capricious.

## CONCLUSION

For the forgoing reasons, we AFFIRM the judgment of the district court.