Fannie HARRIS, Plaintiff,

v.

KEMPER INSURANCE COMPANIES, Defendant.

No. 04–40017.

United States District Court, E.D. Michigan, Southern Division.

Feb. 25, 2005.

John R. Walt, Slusky & Walt, Southfield, MI, for Fannie Harris, Plaintiff.

David F. Schmidt, Chittenden, Murday, Chicago, IL, Patrick G. Kruse, Clark Hill (Detroit), Detroit, MI, for Kemper Insurance Companies, Defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR JUDGMENT

GADOLA, District Judge.

This is a denial of benefits action under the Employment Retirement Income Security Act, as amended, 29 U.S.C. § 1001 *et seq,* ("ERISA"). Plaintiff Fannie Harris is a beneficiary of the Henry Ford Long–Term Disability Plan. Defendant Lumbermens Mutual Casualty Company, erroneously sued as "Kemper Insurance Companies," is responsible for paying Plaintiff's claim. Kemper National Services ("KNS") is the plan's claims administrator. Plaintiff alleges that Defendant's termination of her long term-disability benefits was arbitrary and capricious. Before the Court are Plaintiff and Defendant's cross motions for judgment. A hearing on both motions was held on February 24, 2005. For the reasons stated below, the Court will deny Plaintiff's motion and grant Defendant's motion.

## I. Administrative Record

Plaintiff is a 55–year–old single woman with a high school education. She has

held the occupation of nurse assistant her entire working life. At the time of her disability, she was working as a nurse assistant for Henry Ford Hospital in Detroit. On June 16, 2000, Plaintiff was diagnosed with a herniated disc which caused a mild compression of Plaintiff's spinal cord. Plaintiff's neurosurgeon, Dr. Elisevich, determined Plaintiff to be temporarily totally disabled. Plaintiff's official date of disability was June 20, 2000, and she began receiving long-term disability benefits on December 19, 2000.

On October 11, 2000, Plaintiff underwent surgery to alleviate her compressed spinal cord. On January 10, 2001, after the surgery and physical therapy, Dr. Elisevich found Plaintiff still to be temporarily totally disabled. Plaintiff continued to undergo physical therapy and attended various follow-up examinations with her primary care physician, Dr. Cardwell.

On May 22, 2001, Dr. Cardwell completed an evaluation for KNS, the claims administrator of Plaintiff's long-term disability plan, which found that Plaintiff could not lift anything in excess of 15 lbs. and could not grip anything with her left hand. He found she was capable of only light work. On February 11, 2002, Dr. Cardwell completed another evaluation which found that Plaintiff's condition had worsened. He found that she could not carry or lift anything above 10 lbs. and could not reach above her shoulders. He found that Plaintiff had a severe limitation of functional capacity and was incapable of sedentary work. Since May, 2002, Plaintiff has continued to receive treatment from Dr. Cardwell and from the pain clinic at Henry Ford Hospital.

The Henry Ford Long–Term Disability plan under which Plaintiff was covered defines disability as:

Disabled/Disability means that a significant change in your physical or mental condition due to

1. Accidental injury;
2. Sickness;
3. Mental Illness;
4. Substance Abuse; or
5. Pregnancy

began on or after your Coverage Effective Date and has caused your inability to perform, during the Benefit Qualifying Period and the following 24 months, the Essential Functions of your Regular Occupation or of a Reasonable Employment Option offered to you by the Employer, and as a result you are unable to earn more than 60% of your Pre-disability Monthly Income.

After that, you must be so prevented from performing the Essential Functions of any Gainful Occupation that your training, education and experience would allow you to perform.

Def. Ex. 1, at 10. Thus, for the first 24 months, a plan participant is considered disabled if she cannot perform the essential functions of her regular occupation or a reasonable employment option. Yet, after 24 months, a plan participant is only considered disabled if she cannot perform the essential functions of *any gainful occupation.*

On May 31, 2002, KNS sent Plaintiff a letter informing her that the initial 24 month period would expire on December 19, 2002 and that she would have to prove that she could not perform the essential functions of any gainful employment in order to continue to receive disability benefits. KNS also sent a letter to Dr. Cardwell on May 31, 2002 requesting additional medical records. On June 14, 2002, the Social Security Administration denied Plaintiff's claim for Social Security disability benefits without a hearing. The Social

Security Administration later found Plaintiff to be totally disabled and granted Plaintiff's claim for disability benefits on August 29, 2003. The subsequent, favorable decision, however, is not part of the administrative record.

On June 26, 2002, KNS sent a letter to Plaintiff informing her that its May 31, 2002 request of Dr. Cardwell for additional medical records had been ignored. The letter stated that KNS had requested the records on three previous occasions which were all ignored. The letter was KNS's final request for medical records and stated that if Plaintiff did not provide them within 30 days, her benefits would be terminated. On July 18, 2002, Plaintiff's counsel sent KNS the medical records.

KNS then employed Dr. Superfine to conduct an independent peer review of Plaintiff's medical records, long-term disability questionnaire, and job description. In an opinion dated August 12, 2002, Dr. Superfine concluded that while Plaintiff did have a functional impairment that precluded her from working as a nurse assistant, she did not have a functional impairment which precluded her from any occupation. In conducting his review, Dr. Superfine called Dr. Cardwell to clarify Plaintiff's work status. Dr. Cardwell told Dr. Superfine that Plaintiff was restricted from lifting more than 20 lbs. and from repetitive use of the left arm while manipulating greater than 5 lbs. As a result of Dr. Superfine's evaluation, KNS determined that Plaintiff was not eligible for benefits past the 24 month period.

On December 12, 2002, a vocational care manager, Allison Metz, completed an Employability Assessment Report which identified several jobs within Plaintiff's capability, geographical area and salary range. The report was based on restrictions which enabled Plaintiff to work in sedentary to light positions.

Based on Dr. Superfine's review and the Employability Assessment Report, KNS sent Plaintiff a letter on January 7, 2003 informing her that she was not considered disabled under the plan as she was not precluded from any gainful employment. Plaintiff's counsel responded by requesting an appeal of Plaintiff's claim and copies of any vocational information. On March 7, 2003, Plaintiff's counsel sent KNS additional medical records from Dr. Cardwell from August 6, 2002 through January 31, 2003. The records indicate that Plaintiff continued to experience chronic pain and that her condition appeared to worsen. In a January 31, 2003 record, upon which Plaintiff places much emphasis, Dr. Cardwell stated "I feel that she is presently, totally and at this point, permanently disabled. She no way can perform the duties required on her previous job as a patient care partner." Admin. Rec. at 198.

KNS then submitted Plaintiff's claim to two additional peer reviewers, Dr. Goldman and Dr. Mazal. Both reviewers had access to all of Plaintiff's medical information submitted to date, including the additional information sent on March 7, 2003. Both reviewers concluded that the information failed to support a functional impairment which precluded any gainful occupation. On April 29, 2003, KNS's Appeal Review Committee sent Plaintiff a letter informing Plaintiff that it had completed its review of Plaintiff's case and found that the information lacked evidence to substantiate a significant functional impairment which precluded her from performing the essential functions of any gainful occupation. Plaintiff subsequently filed this lawsuit.

### 1. Standard of Review

This Court follows the guidelines for ERISA denial of benefit claims provided by the Sixth Circuit in *Wilkins v. Baptist*

*Healthcare System, Inc.,* 150 F.3d 609, 619 (6th Cir.1998). Accordingly, this Court has held that

> the Court's role in an ERISA case such as this is to (1) review Defendant's denial of ... benefits solely upon the administrative record, (2) apply the applicable standard of review, and (3) render findings of fact and conclusions of law accordingly. The Court may not admit or consider any evidence not presented to the administrator.
>
> The Court reviews *de novo* a plan administrator's denial of ERISA benefits, unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case an arbitrary and capricious standard is applied.
>
> Under the arbitrary and capricious standard, the administrator's claim can be overturned only upon a showing of internal inconsistency, bad faith, or some similar ground. If the plan administrator's decision is rational in light of the plan's provisions and reasonable with no abuse of discretion, then it must be upheld.

*Racknor v. First Allmerica Financial Life Ins. Co.,* 71 F.Supp.2d 723, 728–29 (E.D.Mich.1999) (Gadola, J.) (citations and footnote omitted). *See also Eriksen v. Metropolitan Life Ins. Co.,* 39 F.Supp.2d 864, 865 (E.D.Mich.1999) (Rosen, J.). In addition, "any possible conflict of interest should be taken into account as a factor in determining whether the [Defendant's] decision was arbitrary and capricious." *Davis v. Kentucky Finance Cos. Retirement Plan,* 887 F.2d 689, 694 (6th Cir., 1989). *See also Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (U.S., 1989) ("Of course, if a benefit plan gives discretion to an administrator or fiduciary who is oper-

ating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'") (quoting Restatement (Second) of Trusts § 187, Comment d (1959)).

### III. Analysis

■ Plaintiff concedes that the plan grants KNS discretion to determine claims and that, therefore, the arbitrary and capricious standard of review applies. Pl. Br. at 8. However, the Court must examine whether there is a possible conflict of interest that must be considered. Because the plan administrator, KNS, was a subsidiary of Defendant Lumbermens Casualty Company at the time Plaintiff's claim was decided, Defendant was both responsible for deciding eligibility for benefits and for paying the claim. The Sixth Circuit has held that " 'there is an actual, readily apparent conflict here, not a mere potential for one' when the insurance company/plan administrator is the insurer that ultimately pays the benefits." *Darland v. Fortis Benefits Ins. Co.,* 317 F.3d 516, 527 (6th Cir., 2003) (quoting *Killian v. Healthsource Provident Adm'rs, Inc.,* 152 F.3d 514, 521 (6th Cir.1998)). Plaintiff also points out that Defendant selected the individuals that performed the Employability Assessment Report and the peer reviews and that Defendant has an incentive to contract with individuals who would favor Defendant. Defendant responds that there is no presumption of conflict where a parent/subsidiary relationship exists.

■ The Court's review of the administrative record does not support a finding of a conflict of interest. Other than the fact that KNS is a subsidiary of Defendant and that Defendant may select who completes the peer reviews, Plaintiff has shown no evidence of any conflict of interest, such as a showing that Defendant's denial was based on the costs of Plaintiff's benefits.

*See Peruzzi v. Summa Medical Plan*, 137 F.3d 431, 433 (6th Cir.1998). On the contrary, the thorough treatment given Plaintiff's claim, the fact that Defendant submitted it to three peer reviews, weighs against a finding of bad faith. Nevertheless, the Court will consider the parent/subsidiary relation and the selection process of the reviewers when determining whether Defendant's denial of Plaintiff's benefits was arbitrary and capricious.

■ Plaintiff claims that Defendant's decision to deny benefits was arbitrary and capricious because it was based on the Employability Assessment Report and the peer review of Dr. Goldman, both of which were flawed. Plaintiff claims the Employability Assessment Report was flawed because Ms. Metz "cherry-picked" which of Plaintiff's records she would rely on in making the report. *See Spangler v. Lockheed Martin Energy Systems, Inc.*, 313 F.3d 356 (6th Cir.2002). According to Plaintiff, this allowed Ms. Metz to rely solely on Dr. Cardwell's medical report of May 10, 2002 that indicated Plaintiff could lift up to 20 lbs., instead of another report which found Plaintiff restricted to 10 lbs. or even the other reports of Dr. Cardwell and the various reports of the pain clinic, both of which showed that Plaintiff's condition was deteriorating. Plaintiff also claims that the peer review of Dr. Goldman was flawed because it improperly ignored Dr. Cardwell's opinion that Ms. Harris was precluded from even sedentary work.

■ Regarding Plaintiff's claims that the opinion of her treating physician, Dr. Cardwell, was not given the proper weight, the Court notes that KNS is not required to "accord special deference to the opinions of treating physicians." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). In fact, "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Id.* at 834, 123 S.Ct. 1965.

> Generally, when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision.

*McDonald v. Western–Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir., 2003). "Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker*, 538 U.S. at 834, 123 S.Ct. 1965.

■ Thus, although Plaintiff's treating physician was in the best position to determine Plaintiff's disability, because he actually had the opportunity to examine Plaintiff, the Court can only require that Defendant consider the opinion of Plaintiff's treating physician. Under the arbitrary and capricious standard, Defendant is free to disagree with the conclusions of Plaintiff's treating physician, and instead prefer the opinions of a reviewing doctor who has never examined Plaintiff so long as those opinions are reasonable and based on the evidence. *See Black & Decker*, 538 U.S. at 834, 123 S.Ct. 1965; *Davis*, 887 F.2d at 693. Although such a rule can work hardships, as it appears to in this case where Defendant is clearly disabled to some extent and experiencing chronic pain, it is nevertheless the rule.

Dr. Cardwell's opinions were included in the records reviewed by the three peer reviewers. Each of the three peer reviewers offered thorough, reasoned explanations for their conclusions. These conclusions were based on the administrative record, a record which contained all of Dr. Cardwell's records received by Defendant, and the three peer reviews all came to the same conclusion. Other than this consideration of Dr. Cardwell's opinion, the Court can require no more of Defendant.

Regarding Plaintiff's claim that Ms. Metz "cherry-picked" Dr. Cardwell's medical records, the Court finds Plaintiff's account not to be wholly accurate. Plaintiff's account does not consider the peer review by Dr. Superfine which was performed prior to the Employability Assessment Report and used by Ms. Metz in completing the report. Dr. Superfine's peer review was made using all of Plaintiff's medical records supplied to date as well as Dr. Superfine's conversation with Dr. Cardwell, where Dr. Cardwell informed Dr. Superfine that Plaintiff could lift up to 20 lbs. Ms. Metz had the benefit of Plaintiffs medical records to date and even performed a telephone interview with Plaintiff to discuss Plaintiff's current condition. Admin Rec. at 258. Furthermore, two more independent peer reviewers, Dr. Goldman and Dr. Mazal, both agreed with the findings of Dr. Superfine's peer review and Ms. Metz's Employability Assessment Report after a complete review of all of Plaintiff's records. Again, this Court cannot find Defendant's choice of a reviewing Doctor's opinion over that of a treating physician to be arbitrary and capricious, so long as "it is possible to offer a reasoned explanation, based on the evidence." *McDonald,* 347 F.3d at 169; *Davis,* 887 F.2d at 693.

After a thorough review of the record, the Court finds that Defendant's denial of Plaintiff's long-term disability benefits was reasonable and consistent with the administrative record and, therefore, not arbitrary and capricious. In all, Defendant's denial of Plaintiff's claim was based on the Employability Assessment Test, three independent peer reviews, and one appeal. While some of Dr. Cardwell's opinions as to Plaintiff's disability might not support the determination by Defendant, Defendant is not required to find those opinions controlling. Dr. Cardwell's objective observations of Plaintiff, and even some of his opinions do support Defendant's determination. Interestingly, the January 31, 2003 report of Dr. Cardwell, upon which Plaintiff placed much emphasis at the hearing, is not inconsistent with Defendant's determination that Plaintiff is not precluded from any gainful employment. While Dr. Cardwell stated that he felt Plaintiff "is presently, totally and at this point, permanently disabled," he qualified that statement with the opinion that Plaintiff "no way can perform the duties required on her previous job as a patient care partner." Admin. Rec. at 198 (emphasis added). That Plaintiff is disabled from **her previous job** is not in question. The question is whether she is disabled from any gainful occupation, and Defendant's determination that she is not has a basis in the record.

Finally, Plaintiff requests that, in the event that the Court finds that Defendant's actions were not arbitrary and capricious, the Court will remand the matter back to KNS so that it may consider the Social Security Administration's August 29, 2003 decision that Plaintiff is totally disabled and unemployable. The Court will refrain from so doing, however, because "[u]nder a rule adopted by the Commissioner of Social Security, in determining whether a claimant is entitled to Social Security disability benefits, special weight is accorded opinions of the claimant's

treating physician," yet KNS is not required to "accord special deference to the opinions of treating physicians." *Black & Decker*, 538 U.S. at 825, 123 S.Ct. 1965. *See* 20 CFR §§ 404.1527(d)(2), 416.927(d)(2) (2002). Even though the disability standard used by the Social Security Administration and Plaintiff's disability plan are essentially the same, *Black & Decker* has changed the manner in which such a determination is made. The Social Security Administration's determination therefore becomes irrelevant to Defendant's determination, because defendant does not need to accord special weight to Plaintiff's treating physician. *Id. See also Hurse v. Hartford Life & Accident Ins. Co.*, 77 Fed.Appx. 310, 316–318 (6th Cir. 2003) ("[I]t would be incongruous to hold that, although the 'treating physician rule' is not applicable in ERISA cases, the ERISA plan administrator is bound by the disability determination of the SSA, which is required to apply that rule.").

## IV. Conclusion

**ACCORDINGLY, IT IS HEREBY ORDERED** that Plaintiff's motion for judgment [docket entry 6] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's motion for judgment is [docket entry 7] **GRANTED**.

**IT IS FURTHER ORDERED** that this civil action, no. 04–40017, is **DISMISSED** with prejudice.

**SO ORDERED.**

### *JUDGMENT*

This action having come before this Court, the Honorable Paul V. Gadola presiding, the issues having been fully presented, the Court being fully advised in the premises, and a ruling having been duly rendered, **IT IS ORDERED AND ADJUDGED** that Plaintiff Fannie Harris

**TAKE NOTHING** from Defendant, and that the action against Defendant be **DISMISSED** on the merits.